Michelle Hatcher Alphord sued her employer, Labinal, Inc./Globe Motors ("Globe Motors"), on May 2, 1997, seeking to recover workers' compensation benefits for injuries she sustained to her "right hand, wrist, arm, and body as a whole" on August 18, 1995, during the course of her employment with Globe Motors. Globe Motors answered the complaint on June 5, 1997, admitting, among other things, that it had received proper notice of the injury. *Page 363 
Globe Motors did not raise the statute of limitations as a defense in its answer. The parties proceeded with discovery.
On November 6, 1998, Alphord moved to amend her complaint, alleging that she also had suffered an injury to her "left hand, arm, shoulder, and body as a whole" on August 18, 1995, during the course of her employment with Globe Motors. On November 12, 1998, Globe Motors moved to strike Alphord's motion to amend. The court granted Alphord's motion to amend on November 23, 1998. Globe Motors answered the amended complaint on November 24, 1998, raising as defenses, among other things, the statute of limitations and failure to give proper notice as to the alleged injury to the left hand/wrist.
On January 20, 1999, Globe Motors moved for a summary judgment as to Alphord's amended complaint, arguing that Alphord's claim for the alleged injury to her left hand/wrist was barred by the applicable two-year limitations provision, pursuant to § 25-5-80, Ala. Code 1975. Globe Motors also argued that Alphord was not entitled to any compensation benefits for the alleged left-hand/wrist injury, because, it said, she had failed to properly notify Globe Motors of the injury, pursuant to § 25-5-78, Ala. Code 1975. Globe Motors' motion for summary judgment was never ruled upon by the court.[1]
Following an ore tenus proceeding, the court entered a one-page order on June 17, 1999, finding that Alphord had suffered an injury known as "cubital tunnel syndrome" to both her right arm and her left arm during the course of her employment and awarding benefits accordingly. The court made no findings of fact or conclusions of law as to the issues relating to the statute of limitations or notice. Globe Motors appeals following the denial of its postjudgment motion.[2]
Alphord was employed as a "team operator" in "major programs" at Globe Motors in 1987. Her job duties included soldering, reading blueprints, and performing other tasks involved in the assembly of small motors. She testified that on August 18, 1995, she was "hooking up paveway," which she described as a process whereby she would twist a copper wire around a lead wire, then solder and tape it into place.[3] Alphord testified that she felt pain shoot from her elbow to her fingertips in her right arm. She stated that she had approximately one month earlier first experienced the pain while working.
Alphord was initially treated by a doctor at a health facility called Primecare. She was prescribed some anti-inflammatory medication and physical therapy and was returned to work on light duty. Alphord testified that when she returned to work she was placed on a different job. She stated that she worked placing "terminals in end caps" and that that job was lighter duty than her previous job, but that she still had to use her right arm to a degree and that she experienced pain in it. When that job was completed, Alphord was placed in a job soldering and washing "bellows and shafts." She stated that she experienced discomfort in doing this job, because it involved a shaking motion while washing the "bellows and shafts;" however, she stated that she was able to do the job because she used her left arm more. Alphord testified that she never returned to her regular job of "hooking up paveway" after August 18, 1995, unless it was to *Page 364 
occasionally help out when production fell behind.
Alphord was seen by Dr. Christopher Robinson, an orthopedic surgeon, on August 30, 1995; on that occasion, she was complaining of pain in her right arm from her elbow to her fingertips. Dr. Robinson diagnosed her with cubital tunnel syndrome, a condition in which the ulnar nerve is compressed at the point where it passes through the cubital tunnel in the elbow. Dr. Robinson testified that because of overuse, irritation, or other reason the ulnar nerve becomes inflamed and causes increased pressure on the nerve within the cubital tunnel. Dr. Robinson initially treated Alphord conservatively with anti-inflammatory medication, steroid injections, and stretching exercises. He testified that he released her to full activities on October 26, 1995.
Alphord was seen by Dr. John Haley, an associate of Dr. Robinson's, on June 10, 1996. On that occasion, she was complaining of a "flare up" of her symptoms in her right arm after "she shook some pumps" at work. Dr. Haley examined Alphord and had her see Dr. Robinson again on July 7, 1996. Dr. Robinson noted at that time that she continued to have symptoms consistent with cubital tunnel syndrome and recommended surgery to correct the problem. Dr. Robinson performed a cubital-tunnel release on Alphord's right arm in November 1996. He testified that he continued to treat Alphord following the surgery and stated that although Alphord had had continued complaints of pain, he believed she was improving.
Alphord was seen by Dr. Robinson again on April 2, 1997; he noted at that time that she had some symptoms of numbness and tingling in the right elbow. Dr. Robinson determined that Alphord was close to maximum medical improvement and scheduled her for a functional-capacity evaluation. Mark Mashburn, a physical therapist, performed a functional-capacity evaluation on Alphord on April 11, 1997. Mashburn assigned Alphord a physical-impairment rating of 10% to the right upper extremity and 6% percent to the body as a whole. He placed Alphord in the light physical-demand category and placed certain restrictions on her, including a restriction that she do no frequent material handling and no repetitive bending of her right elbow past the midrange position. Dr. Robinson testified that he agreed with and "signed off" on the impairment rating and the restrictions assigned to Alphord by Mashburn.
Alphord returned to Dr. Robinson on May 2, 1997, complaining of continued pain and numbness in her right upper arm running down into her hand. Dr. Robinson stated that he had done everything he could for Alphord and therefore he referred her to Dr. Barry Callahan, an associate of Dr. Robinson, for an evaluation. Dr. Callahan agreed with Dr. Robinson's treatment and diagnosis of Alphord, as well as with the impairment rating and restrictions assigned to her. Dr. Robinson released Alphord to return to work within the restrictions contained in the functional-capacities evaluation on July 21, 1997.
Following her surgery, Alphord returned to work at Globe Motors in August 1997, labeling and stamping motors; however, she worked only three days before leaving the job. Alphord testified that the labeling and stamping job was repetitive in nature and that she could not perform it because of the pain in her right arm. Dr. Robinson and Mashburn both testified that they had observed this job task and had determined that it was within the restrictions assigned Alphord and that she could perform the job. Alphord has not worked at Globe Motors since August 1997.
Dr. Robinson had previously referred Alphord for pain management to address her ongoing complaints of pain. Alphord was seen by Dr. David H. Evans on September 26, 1997, for treatment of her pain. She informed Dr. Evans that she was beginning to have symptoms in her left arm similar to those in her right arm. This is *Page 365 
the first instance in which Alphord had complained of symptoms in her left arm, hand, and wrist. Alphord continued to return to Dr. Robinson with complaints of pain. Dr. Robinson referred Alphord to Dr. Vicky Masear, a hand and upper-extremity specialist, on October 2, 1997. Alphord was seen by Dr. Masear on October 16, 1997, and Dr. Masear noted at that time that Alphord was complaining of numbness and paresthesia in her left elbow and hand. Dr. Masear's examination notes indicate that they were copied to "workmens comp"[4] and to Dr. Robinson.
Alphord was seen again by Dr. Evans on October 23, 1997, with continued complaints of symptoms in her left arm. She returned to Dr. Robinson on June 24, 1998, complaining of pain associated with numbness and tingling in her left elbow running down to her hand. She was seen by Dr. Robert Allen on March 9, 1999; on that occasion she was complaining of pain in both her right arm and her left arm, radiating from her elbow to her hand. Dr. Allen diagnosed Alphord with bilateral ulnar neuropathy at the elbow in both the right and left arms, which was secondary to repetitive production-assembly-line work over several years. Dr. Allen testified that nerve injuries that occur from repetitive stress generally take time to develop and that Alphord had probably had an onset of ulnar neuropathy in her left arm during the course of her employment, which had worsened over time. Dr. Allen also testified that Alphord's symptoms were more severe in her right arm and that this fact had caused her to rely more upon her left arm, both at work and in her daily activities, causing her to develop similar symptoms in her left arm. Dr. Allen assigned Alphord a 46% physical-impairment rating to the right upper extremity, with a corresponding impairment rating of 28% to the body as a whole. Dr. Allen further assigned Alphord a physical impairment rating of 7% to the left upper extremity, with a corresponding impairment rating of 4% to the body as a whole. Dr. Allen assigned Alphord a net whole-person physical-impairment rating of 31%.
Globe Motors argues on appeal that Alphord is not entitled to recover benefits for the alleged injury to her left arm, because, it says, her claim is barred by the applicable two-year limitations provision found in § 25-5-80, Ala. Code 1975, and because she failed to give proper notice of the alleged injury to Globe Motors, as required by § 25-5-78, Ala. Code 1975. The time-period and notice issues were presented to and litigated in the trial court; however, the trial court made no findings of fact or conclusions of law with regard to those issues. Section 25-5-88, Ala. Code 1975, requires that a judgment in a workers' compensation case contain findings of fact and conclusions of law.
 "This court has recognized that substantial compliance with the statute is sufficient. Fordham v. Southern Phenix Textiles, Inc., 387 So.2d 204
(Ala.Civ.App. 1980); however, the trial court has a duty to make a finding on each issue presented and litigated before it. In instances where the trial court fails to make a finding responsive to the issue presented, the case must be reversed."
Thomas v. Gold Kist, Inc., 628 So.2d 864, 867 (Ala.Civ.App. 1993) (citations omitted). See also Ex parte Valdez, 636 So.2d 401 (Ala. 1994). Accordingly, we must reverse the judgment of the trial court and remand the case for the court to make the appropriate findings of fact and conclusions of law regarding the issues presented and litigated.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Robertson, P.J., and Monroe, J., concur.
Crawley and Thompson, JJ., concur in the result.
[1] It appears from the case action summary that the hearing on Globe Motors' motion for summary judgment was continued on two occasions and was never heard by the court.
[2] We note that Alphord moved the court to amend its order so as not to conflict with an application for Social Security benefits, which she had filed. Alphord specifically requested the court to amend its order to indicate that the compensation benefits would be paid over her expected life span. The court granted the motion and amended its order for this limited purpose.
[3] The evidence indicates that Alphord was involved in production work that was repetitive in nature. She stated that the job involved twisting and pulling.
[4] We assume this means that the notes were forwarded to Globe Motors' workers' compensation insurance carrier. *Page 366