On Application for Rehearing

THOMAS, Judge.
This court’s opinion of April 29, 2011, is withdrawn, and the following is substituted therefor.
Metals USA Plates and Shapes Southeast, Inc. (“the employer”), appeals from a judgment of the Mobile Circuit Court, in which the trial court determined that Albert Conner was permanently and totally disabled as the result of a workplace accident. We reverse and remand, based on the trial court’s failure to comply with § 25-5-88, Ala.Code 1975.
On September 14, 2005, Conner was injured in a workplace accident while acting in the course and scope of his duties with the employer. At the time of the accident, Conner was standing on a flatbed trailer assisting in the loading of some bundles of angle iron. As Morris Sullivan, another employee, operated a crane to maneuver the angle iron into place on the trailer, the angle iron shifted, crushing Conner’s ankle between the angle iron and another bundle of iron, which had already been loaded onto the trailer. The remaining details of the accident were disputed. At trial, Conner claimed that, after his ankle had been crushed, he fell approximately five feet from the trailer to the ground, landing on his right shoulder. Sullivan, the only witness to the accident, testified that Conner had grabbed hold of the crane cables, that Sullivan had lowered Conner from the trailer, and that Conner had then fallen about two feet, landing in a sitting position.
After the accident, Conner was treated by paramedics and then transported to the emergency room at Mobile Infirmary Medical Center. At the hospital, Dr. Jeffrey M. Conrad examined Conner. Dr. Conrad diagnosed Conner with a bimalleolar fracture of the right ankle and an injured syndesmosis.[1] On September 20, 2005, Dr. Conrad operated on Conner, performing an open reduction internal fixation of the bimalleolar ankle fracture with syndes-modic fixation. As part of the surgery, Dr. Conrad inserted a metal plate into Conner’s ankle, which he affixed with screws. On February 2, 2006, Dr. Conrad performed a second surgery on Conner’s ankle to remove one of the screws because it was causing Conner pain.
On January 18, 2006, Conner filed a complaint in the trial court, alleging, among other things, that he “was caused to sustain severe and disabling injuries to *430 his right foot while performing his job duties for [the employer].” Conner did not reference any other alleged injuries in his complaint. Conner also did not mention any alleged injuries other than to his ankle in his responses to the employer’s interrogatories.
The employer deposed Conner on September 6, 2006, almost one year after the accident. The employer’s counsel inquired of Conner as to what parts of his body were injured or were causing him pain. The following exchange between Conner and the employer’s counsel occurred:
“[The employer’s counsel]. Nothing wrong with your shoulders?
“[Conner]. No — sometimes I have pain in my shoulders, but I don’t know whether it comes from that or not, yes.
“[The employer’s counsel]. What about your arms? You didn’t hurt your elbow or your wrist or your fingers?
“[Conner]. No. I know — and when— when they finally came, I was off the truck. I was laying on the shoulder down, so maybe that’s — that’s where I have it, my shoulder part come in on the shoulder.
“[The employer’s counsel]. What shoulder is hurting you?
“[Conner]. The right one.”
Later in the deposition, the following exchange occurred:
“[The employer’s counsel]. But you’ve already testified today that the only problems that you’re having is your right leg, your right ankle, and your headaches; correct?
“[Conner]. Right.
“[The employer’s counsel]. Okay.
“[Conner’s counsel]: Didn’t he say something about his shoulder?
“[The employer’s counsel]: Well, he said he had some shoulder, but he didn’t think it was caused by this.
“[The employer’s counsel]. Isn’t that correct?
“[Conner]. Well, I happened to be on my shoulder when I fell off the truck, so I don’t know whether that came from it or not.
“[The employer’s counsel]. You don’t know one way or the other?
“[Conner]. When the pain I never got it checked out for that.
“[The employer’s counsel]. Have you ever been treated for your shoulder?
“[Conner]. No.”
On June 14, 2007, Conner amended his complaint, correcting the name of the employer; Conner did not amend his claims or add any additional claims. On April 8, 2008, Conner moved the trial court to compel the employer to provide him with a panel of four physicians pursuant to § 25-5-77(a), Ala.Code 1975. In his motion, Conner alleged that “[a]s a result of the injury and surgery to his foot [Conner] was required to use crutches for approximately twelve months which resulted in an injury to his right shoulder.” Conner further alleged that “Dr. Conrad has refused to treat [Conner’s] shoulder and as a result thereof [Conner] is dissatisfied with the care provided by Dr. Conrad.” The trial court granted Conner’s motion to compel on April 15, 2008, ordering the employer to provide Conner with a panel of four physicians.
On April 17, 2008, the employer filed a motion requesting that the trial court withdraw or, in the alternative, reconsider its order compelling the employer to provide Conner with a panel of four physicians. The employer argued in its motion that it had not had an opportunity to respond to Conner’s motion before the trial court entered its order. The employer also, among other things, denied that Conner’s alleged shoulder injury was the result of a work *431 place accident or had arisen from another workplace injury. Therefore, the employer argued, because the alleged injury to Conner’s shoulder had not been determined to be a compensable injury, it should not be ordered to provide treatment for that injury. The employer later filed a supplemental brief in support of its motion, in which it argued that Conner was not entitled to a panel of four physicians. The employer argued:
“[Conner] now claims that he is entitled to medical treatment for shoulder problems resulting from using crutches while he was recovering from his ankle injury. [Conner’s] complaint does not allege that he suffered a shoulder injury in any purported work place accident and does not include an allegation that his ankle injury extends to other parts of his body. However, the [employer] denies that [Conner] suffered an injury to his shoulder in any work place accident, or that he injured his shoulder using crutches while recovering from his ankle injury. In fact, Dr. Conrad testified that, other than rubbing the armpits, he had never heard of a shoulder injury resulting from the use of crutches, and Dr. Conrad is a shoulder specialist.”
The trial court granted the employer’s motion to withdraw its April 15, 2008, order, and it set a date for a hearing on Conner’s motion to compel. Following a hearing, the trial court entered an order on July 25, 2008, directing the employer to provide Conner with a panel of four physicians. The trial court also stated in its order that “the parties are requested to notify the Court so that a hearing may be heard on the issue of compensability as to the shoulder.” The employer petitioned this court for a writ of mandamus, challenging the trial court’s order. This court denied the employer’s petition by order, “on the condition that the [trial] court’s July 25, 2008, order be construed not to include any assessment of or treatment for an alleged shoulder injury.”
The trial court conducted a trial on Conner’s complaint on November 12, 23, and 24, 2009, at which the trial court heard ore tenus evidence. Conner presented testimony and evidence regarding his alleged injuries. Conner testified at trial that, after his ankle had been crushed by the angle iron, he had fallen off the trailer and had landed on his shoulder. Conner testified that he had injured his shoulder in the fall. Conner testified that he first noticed pain in his shoulder in November 2005, approximately two months after the accident. According to Conner, he began suffering lower-back pain in the middle of 2008. Dr. Robert Zarzour, an orthopedic surgeon who had treated Conner, testified in his deposition that there is a high association between an altered gait and lower-back pain. The employer elicited testimony from Conner and provided evidence indicating that Conner had not included a shoulder or lower-back injury in his complaint and that he had never amended his complaint to include either injury.
Both parties filed posttrial briefs in the trial court. The employer argued in its posttrial brief that Conner’s shoulder-injury claim and his lower-back-injury claim were barred by the statute of limitations[2] because, it argued, neither Conner’s com *432 plaint nor his amended complaint included those claims. The employer further argued that
“Mr. Conner apparently has alternative theories as to the cause of his purported shoulder and lower back injuries. Under .one theory, Mr. Conner contends the he injured his shoulder using crutches, and his lower back as the result of an altered gai[t]. The other theory is that he actually suffered three injuries in his September 14, 2005 accident, an ankle injury, a shoulder injury (as a result of a fall) and a lower back injury (as a result of a fall), Mr. Conner no doubt filed his lawsuit with respect to the ankle injury within two years of his September 14, 2005 accident. However, to the extent he is claiming separate injuries (the shoulder and the lower back) arising from that accident, he did not file a claim for those injuries within two years of the accident.”
The trial court entered a judgment on April 22, 2010, determining that Conner was totally and permanently disabled. Among its findings of fact, the trial court found:
“2. ... On September 14, 2005, [Conner] suffered a bimalleolar ankle fracture to the right ankle in a work accident as defined by Alabama’s Workers’ Compensation Act. The injury arose out of and was suffered while working within the line and scope of his employment with [the employer], [The employer] received prompt and actual notice of the said accident.
“10. [Conner] first noticed pain in his right shoulder when he laid down on his right side approximately 2 months following the September 14, 2005[,] work accident. Although Dr. Conrad does not recall the event, [Conner] reported the shoulder pain to Dr. Conrad at that time. The pain in [Conner’s] shoulder became progressively worse the longer he remained on crutches.
“11. [Conner] began experiencing pain in his lower back in mid to late 2008. The lower back pain has become progressively worse. As several medical experts testified in this case, an altered gait can lead to chronic low back pain. As the Court observed at time of trial, [Conner] walks very slowly, with a pronounced antalgic gait and required the assistance of a cane to ambulate. As Dr. Robert Zarzour, an orthopedic surgeon with more than 30 years of experience testified, [Conner’s] lumb[a]r problems are related to the trauma he suffered when his ankle was crushed and he fell off of the truck.
“21. ... [Conner] injured his right shoulder in the September 2005 work accident when he fell from the top of a flatbed trailer, striking his right side on the ground. The shoulder injury was aggravated thereafter by the prolonged use of crutches for approximately 1 year following this work accident.”
Among its conclusions of law, the trial court determined:
“27. On September 14, 2005, [Conner] injured his right ankle and right shoulder when his ankle was crushed by a shifting load of angle iron, and [Conner] thereafter fell appi-oximately 5 feet from the top of a flatbed trailer landing on his right side. At the time of the accident, [Conner] was acting within the line, course and scope of his employment with [the employer]. [The employer] received prompt and actual notice of the said accident.
“28. [Conner] has presented substantial evidence that the use of crutches for approximately 12 months following the work accident aggravated the origi *433 nal injury to his shoulder. ‘If a worker’s compensation claimant shows that he received an initial injury which arose out of and in the course of his employment, then every normal consequence that flows from the injury likewise arises out of the employment.’ Ex parte Pike County Comm., 740 So.2d 1080 (Ala.1999). This Court finds that the aggravation of the injury to the right shoulder is a natural consequence flowing from the initial injuries suffered in the work accident, that [the employer] received appropriate notice of the shoulder injury, and that the injury to [Conner’s] shoulder is a compensable injury.
“30. ... [Conner] has presented substantial evidence that he suffers chronic pain in his ankle and lower back. The chronic back pain is a natural consequence flowing from the initial injury to [Conner’s] ankle because of the change in [Conner’s] gait.”
In its judgment, the trial court also stated that
“[Conner] has filed a Motion to Tax Costs and the [employer] has filed a response in opposition thereto. A hearing on the same is currently scheduled for April 30, 2010. Any costs incurred by [Conner] in the prosecution of his claim that may be taxed against the [employer] shall be addressed by separate order following the hearing on that issue.”
The trial court did not make any findings of fact or conclusions of law with respect to the employer’s statute-of-limitations argument.
On May 24, 2010, the employer appealed to this court (case no. 2090800). On May 25, 2010, after the employer filed its notice of appeal, the trial court entered an order granting Conner’s motion to tax costs in the amount of $5,551.56. Conner filed a postjudgment motion, requesting that the trial court add an additional $2,085 in costs to its award. The trial court granted Conner’s postjudgment motion on June 14, 2010. The employer subsequently filed a second notice of appeal to this court (case no. 2091020). This court consolidated the two appeals.
The employer advances several arguments on appeal. The employer first argues that the trial court’s judgment does not contain findings of fact and conclusions of law as required by § 25-5-88, Ala. Code 1975, with respect to the issues of notice and the applicability of the statute of limitations with regard to Conner’s claimed shoulder and lower-back injuries.
“ ‘The purpose of Ala.Code 1975, § 25-5-88, is to “ensure sufficiently detailed findings so that the appellate court can determine whether the judgment is supported by the facts.” ’ Farris v. St Vincent's Hosp., 624 So.2d 183, 185 (Ala.Civ.App.1993) (quoting Elbert Greeson Hosiery Mills, Inc. v. Ivey, 472 So.2d 1049, 1052 (Ala.Civ.App.1985)). ‘[T]he trial court has a duty to make a finding on each issue presented and litigated before it. In instances where the trial court fails to make a finding responsive to the issue presented, the case must be reversed.’ Thomas v. Gold Kist, Inc., 628 So.2d 864, 867 (Ala.Civ.App.1993); see also Harbin v. United States Steel Corp., 356 So .2d 179 (Ala.Civ.App.1978); and Dun & Bradstreet Corp. v. Jones, 678 So.2d 181 (Ala.Civ.App.1996). In Harbin v. United States Steel Corp., this court reversed the trial court’s judgment and remanded the case because the trial court had failed to address or to make findings regarding the issue of notice of injury to the employer, despite the issue being presented and litigated. In Harbin, this court stated:
*434 ‘“In the present case the question of whether Harbin notified his employer of his injury was pleaded, contested and submitted to the trial court for its determination. Despite this fact there was no finding made on this issue in the court’s original judgment. Nonetheless, Harbin maintains that the absence of a finding of notice of injury does not require reversal since a number of Alabama cases have held that when a finding of the trial court is merely meager or omissive, the reviewing court may examine the evidence in order to decide if the trial court’s judgment can be sustained. E.g., West Point Mfg. Co. v. Bennett, 263 Ala. 571, 83 So.2d 303 (1955); Alabama Textile Products Corp. v. Grantham, 263 Ala. 179, 82 So.2d 204 (1955). However, such is not the rule when, as here, there was no finding made on the issue in question.’
“356 So.2d at 181-82.”
Equipment Sales Corp. v. Gwin, 4 So.3d 1125, 1129-30 (Ala.Civ.App.2008).
We will first address the question whether the trial court included sufficient findings of fact and conclusions of law regarding the notice issue. With respect to Conner’s alleged shoulder injury, the trial court clearly stated in its judgment that “[the employer] received appropriate notice of the shoulder injury.” Therefore, the trial court complied with the requirements of § 25-5-88. With respect to Conner’s alleged lower-back injury, the trial court did not make any specific findings of fact or conclusions of law that explicitly address notice. The trial court did conclude, however, that Conner’s “chronic back pain is a natural consequence flowing from the initial injury to [Conner’s] ankle because of the change in [Conner’s] gait.” In Ragland Brick Co. v. Campbell, 409 So.2d 443 (Ala.Civ.App.1982), we noted:
“[T]his court’s opinion in Beatrice Food[s] Co. v. Clemons, [54 Ala.App. 150, 306 So.2d 18 (1975) ], wherein we indicated that once the employer has actual knowledge of an accident and injury, the statute does not require that the claimant provide further notice or continuing information except upon request. In light of Beatrice Foods, we are not convinced that it was absolutely necessary that the employer be informed of the back injury as long as there was a reasonable medical connection between the injury the employer was specifically informed of and the resulting injury. In this case, the medical testimony indicated that the circumstances surrounding employee’s knee injury were not incompatible with his subsequent back problems. Thus, here there was a reasonable medical connection between the knee injury and the back problem.”
409 So.2d at 445-46.
In this case, the trial court found that Conner had provided the employer with actual notice of the accident and of Conner’s ankle injury. The trial court further found that Conner’s lower-back injury was the result of an altered gait, which was caused by Conner’s ankle injury. Because the trial court’s findings indicate that there was a reasonable medical connection between Conner’s lower-back injury and his ankle injury, Conner was not required to specifically notify the employer of his lower-back injury. Therefore, any failure of the trial court to make an express finding of fact or conclusion of law with respect to whether the employer received notice of Conner’s lower-back injury merely caused the trial court’s findings and conclusions to be meager and omissive and does not require reversal. See, e.g., Werner Co. v. Williams, 871 So.2d 845, 853 (Ala.Civ.App.2003) (“To the extent some of *435 the findings of the trial court may be meager or omissive, we note that a reversal is not required. Instead, we merely conduct the same review as we would of more specific factual findings to determine whether the ultimate finding made by the trial court is supported by substantial evidence.”).
We now turn to the employer’s argument that the trial court failed to make any findings of fact or conclusions of law on the statute-of-limitations issue. A review of the trial court’s judgment shows that the judgment does not contain any findings of fact or conclusions of law with regard to the statute-of-limitations issue, which was raised by the employer.
“ ‘This court has recognized that substantial compliance with the statute is sufficient. Fordham v. Southern Phenix Textiles, Inc., 387 So.2d 204 (Ala.Civ.App.1980); however, the trial court has a duty to make a finding on each issue presented and litigated before it. In instances where the trial court fails to make a finding responsive to the issue presented, the case must be reversed.’ ”
Labinal, Inc/Globe Motors v. Alphord, 767 So.2d 362, 365 (Ala.Civ.App.2000) (quoting Thomas v. Gold Kist, Inc., 628 So.2d 864, 867 (Ala.Civ.App.1993)). The issue whether Conner’s claims for compensation for his alleged injuries to his shoulder and his lower back were barred by the statute of limitations was presented to the trial court. Because the trial court failed to make any findings or conclusions with regard to the statute-of-limitations issue, we must reverse the trial court’s judgment and remand the cause to that court for it to make the appropriate findings of fact and conclusions of law with respect to that issue. See Labinal, 767 So.2d at 365.[3]
Because the trial court’s judgment awarding costs to Conner may be affected by the trial court’s determination as to the applicability of the statute of limitations, we reverse that judgment as well.
2090800 — APPLICATION OVERRULED; OPINION OF APRIL 29, 2011, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
PITTMAN and BRYAN, JJ„ concur.
THOMPSON, P.J., concurs in part and dissents in part, with writing.
MOORE, J., dissents, without writing.
2091020 — APPLICATION OVERRULED; OPINION OF APRIL 29, 2011, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
MOORE, J., dissents, without writing.

. Dr. Conrad explained that a bimalleolar fracture means that the patient has a fracture to the lateral malleolus, which is on the outside of the ankle, and to the medial malleolus, which is on the inside of the ankle. Dr. Conrad further explained that the syndesmo-sis is the ligament that lies between the tibia and fibula.

. Section 25-5-80, Ala.Code 1975, provides, in pertinent part:
“In case of a personal injury not involving cumulative physical stress, all claims for compensation under this article shall be forever barred unless within two years after the accident the parties shall have agreed upon the compensation payable under this article or unless within two years after the accident one of the parties shall have filed a verified complaint as provided in Section 25-5-88.”

. Because we reverse the trial court’s judgment based on our conclusion that the judgment does not contain findings of fact and conclusions of law as required by § 25-5-88 with respect to the applicability of the statute of limitations to Conner’s shoulder-injury and lower-back injury claims, we pretermit discussion of the remaining arguments raised by the employer in its appeal.