PER CURIAM.
 

 Karen Harris (“the dependent”) appeals from the judgment of the Montgomery Circuit Court in favor of Russell Petroleum Corporation (“the employer”), denying the dependent’s claim for death benefits that she had brought pursuant to the provisions of the Workers’ Compensation Act (“the Act”), codified at Ala.Code 1975, § 25-5-1 et seq. We reverse and remand.
 

 Facts and Procedural History
 

 Eddie Harris (“the employee”) worked for the employer as a fuel-delivery driver from the late 1980s until his death in 2008. In 2001, the employee injured his right knee, and, in 2002, the employee injured his left knee — both injuries were the result of work-related accidents. The employee received workers’ compensation benefits for both injuries, both of which required surgical intervention. The employee suffered an additional, unspecified work-related knee injury in 2005.
 

 In 2008, the employee underwent bilateral knee-replacement surgery. The employer’s previous workers’ compensation carrier approved and paid for the employee’s knee-replacement surgery.
 
 [1]
 
 ■ The employee suffered a stroke one day after the surgery, resulting in his death.
 

 Following the employee’s death, the dependent filed a complaint in the trial court, seeking an award of death benefits and funeral expenses.
 
 [2]
 
 The dependent claimed that the cumulative stress of performing the employee’s job duties had necessitated the employee’s 2008 knee-replacement surgery. The dependent then claimed that the knee-replacement surgery had caused the employee’s stroke and resulting death. The employer denied that the employee’s need for knee-replacement surgery had been caused by the performance of his work duties and denied that the employee’s stroke and subsequent death had been caused by the knee-replacement surgery. The employer also alleged that the employee had not given the employer proper notice of the injury that led to the knee-replacement surgery. The parties submitted the case to the trial court on the stipulations of the parties, trial briefs, deposition testimony, and written affidavits;
 
 *1228
 
 the trial court did not hear any oral testimony.
 

 The trial court entered a judgment
 
 [3]
 
 determining that:
 

 “Dr. [Roland] Hest[e]r, who was the orthopedic surgeon for the [employee] testified that there was no way for him to say with a reasonable degree of medical certainty that the knee replacement surgery caused the stroke. Dr. [Rodney] Swill[ie], who is a board certified neurologist also testified that he could not say with a reasonable degree of medical certainty that the bilateral knee replacement surgeries caused the stroke. There is no clear and convincing evidence to establish a causal link between the surgeries and the cause of [the employee’s] death. Even if the court agrees with [the dependent] that the bilateral knee replacement was necessary due to [the employee’s] work related activities, all the medical testimony cannot say with a degree of medical certainty that this surgery caused his death.”
 

 The trial court did not make any findings as to whether the employee’s knee injury was work related or as to whether the employee had properly notified the employer of his injury.
 
 [4]
 
 The dependent filed a postjudgment motion, pursuant to Rule 59(e), Ala. R. Civ. P. The trial court denied the dependent’s motion, and she appealed to this court.
 

 Issues
 

 The dependent raises two issues in her appeal: (1) whether the trial court erred by requiring her to prove by clear and convincing evidence that the employee’s stroke was caused by his knee-replacement surgery and (2) whether the trial court erred by requiring her to prove to a reasonable degree of medical certainty that the knee-replacement surgery caused the employee’s stroke.
 

 Standard of Review
 

 The issues presented in this appeal involve legal determinations by the trial court. “In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.” Ala.Code 1975, § 25-5-81(e)(l).
 

 Analysis
 

 Under the theory advanced by the dependent in her pleadings, stipulations, and at trial, in order for her to recover death benefits under the Act, the dependent had to prove (1) that cumulative trauma experienced in the course of the employee’s employment with the employer caused, or contributed to, the employee’s need for bilateral knee-replacement surgery and (2) that the surgery caused, or contributed to, the stroke that led to the death of the employee so that the death would be considered a direct and natural consequence of the work-related knee injuries.
 
 See Ex
 
 
 *1229
 

 parte Pike County Comm’n,
 
 740 So.2d 1080, 1084 (Ala.1999) (quoting 1 Arthur Larson
 
 &
 
 Lex K Larson,
 
 Larson’s Workers’ Compensation Law
 
 § 13.00 (1998)) (“ ‘When determining whether a successive injury is compensable, the general rule is that “[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to [the] claimant’s own intentional conduct.” ’ ”);
 
 Patterson v. Clarke County Motors, Inc.,
 
 551 So.2d 412 (Ala.Civ.App.1989) (treating accidental fracture of femur during surgery to repair hip prosthesis damaged in a work-related accident as a compensable injury); and
 
 Simpson v. Dallas Selma Cmty. Action Agency,
 
 637 So.2d 1360 (Ala.Civ.App.1994) (affirming judgment finding that accidental severance of nerve during injured worker’s hand surgery resulted in compensable injury). The dependent concedes that, under Ala.Code 1975, § 25-5-81(c), she must prove the first prong of her theory by clear and convincing evidence, but she argues that the trial court erred in requiring her to also prove the second prong of her theory by clear and convincing evidence.
 

 An accidental injury that results as a direct and natural consequence of an earlier compensable injury is itself a separate accident and injury for purposes of the Act.
 
 See Gulf States Steel, Inc. v. White,
 
 742 So.2d 1264 (Ala.Civ.App.1999) (claim that worker received injuries as the result of a fall in 1992 did not relate back to claim arising from 1989 accident despite contention that the 1992 fall was caused by weakness in worker’s leg from 1989 accident);
 
 Fort James Operating Co. v. Cramp,
 
 947 So.2d 1053 (Ala.Civ.App.2005) (interpreting
 
 White
 
 as holding that, although a subsequent injury occurring outside of workplace may be compensable under the Act if the injury is a natural consequence of the workplace injury, the subsequent injury is a separate injury for purposes of the statute of limitations). Therefore, the evidentiary standard applicable to that separate injury depends on the manner in which the worker alleges the original compensable injury directly and naturally led to the subsequent injury.
 
 See generally V.I. Prewett & Son, Inc. v. Brown,
 
 896 So.2d 564, 568 (Ala.Civ.App.2004) (citing
 
 Ex parte USX Corp.,
 
 881 So.2d 437 (Ala.2003)) (“[T]he burden of proof the worker must meet in a workers’ compensation action depends not upon the nature of the condition for which the worker claims benefits, but upon the manner in which that condition was purportedly caused.”). If the worker asserts that the original compensable injury caused the worker to gradually acquire a successive injury due to cumulative trauma, then the clear-and-convincing-evidence standard applies to that claim.
 
 See Walart Stores, Inc. v. Kennedy,
 
 799 So.2d 188 (Ala.Civ.App.2001) (holding that the clear-and-convincing-evidence standard applied to the claim of an injured worker who asserted that she had acquired carpal tunnel syndrome from repetitively using a cane and walker while convalescing from work-related hip injuries); and
 
 Sistrunk v. Sikorsky Support Servs., Inc.,
 
 961 So.2d 166 (Ala.Civ.App.2007) (applying clear-and-convincing-evidence standard to claim that worker injured left shoulder due to overuse following work-related right-shoulder injury). On the other hand, if the worker alleges that the original compensable injury caused the worker to suffer a later sudden, traumatic injury, it follows that the clear- and-convincing-evidence standard would not apply to that claim.
 

 In this case, the dependent alleges that, during a 4-hour surgery, bodily
 
 *1230
 
 stress or the shifting of bodily fluids caused something to dislodge in the circulatory system of the employee, which led approximately 12 hours later to a stroke that, within 3 days, led to respiratory failure and the death of the employee. That claim essentially asserts that the bilateral knee injuries sustained by the employee led to a sudden, traumatic injury that caused the death of the employee.
 
 See New River Coal Co. v. Files,
 
 215 Ala. 64, 109 So. 360 (1926) (holding that four-hour exposure to carbon monoxide constituted unexpected and sudden event so as to qualify as a work-related accident). Therefore, the dependent’s claim that the employee’s stroke was caused by his knee-replacement surgery does not fall within the class of claims governed by the elear- and-convincing-evidenee standard, as the trial court erroneously concluded.
 

 The dependent next argues that the trial court erred by requiring the dependent to establish to a reasonable degree of medical certainty that the employee’s surgery caused his stroke. To establish medical causation in cases involving an accidental injury, “ ‘an employee must ... establish medical causation by showing that the accident caused or was a contributing cause of the injury.’”
 
 Page v. Cox & Cox, Inc.,
 
 892 So.2d 413, 417 (Ala.Civ.App.2004) (quoting
 
 Pair v. Jack’s Family Rests., Inc.,
 
 765 So.2d 678, 681 (Ala.Civ.App.2000)). When a trial court determines whether a claimant has proven medical causation, “[i]t is in the overall substance and effect of the whole of the evidence, when viewed in the full context of all the lay
 
 and
 
 expert evidence, and not in the witness’s use of any magical words or phrases, that the test [for medical causation] finds its application.”
 
 Ex parte Price,
 
 555 So.2d 1060, 1063 (Ala.1989). Thus, it was not necessary for Dr. Roland Hester or Dr. Rodney Swillie to have used any special words or phases, such as “reasonable degree of medical certainty,” to establish that the knee-replacement surgery caused the employee’s stroke; rather, the trial court should view any such statements in the context of the whole of Dr. Hester’s and Dr. Swillie’s testimony, along with the other evidence, when determining whether medical causation exists. However, the “ ‘evidence presented by a [workers’] compensation claimant must be more than evidence of mere possibilities that would only serve to “guess” the employer into liability.’ ”
 
 Ex parte Southern Energy Homes, Inc.,
 
 873 So.2d 1116, 1122 (Ala.2003) (quoting
 
 Hammons v. Roses Stores, Inc.,
 
 547 So.2d 883, 885 (Ala.Civ.App.1989)). Thus, in order for the dependent to prove medical causation, the evidence, when viewed as a whole, must show that there is more than a mere possibility that the knee-replacement surgery caused the employee’s stroke. To the extent that the trial court may have relied solely on the witnesses’ statements that they could not say “with a reasonable degree of medical certainty” that the knee-replacement surgery caused the employee’s stroke, we remind the trial court that on remand it should look to the totality of the evidence in determining whether the dependent has proven medical causation in this case.
 

 Conclusion
 

 Because the trial court applied the incorrect burden of proof, we must reverse the trial court’s judgment. We note that, because of the manner in which it disposed of the case, the trial court did not make any findings regarding the first part of the theory advanced by the dependent and it also did not make any findings regarding the other issues raised by the parties in the case. Accordingly, we instruct the trial court on remand to analyze the causal
 
 *1231
 
 connection between the surgery and the stroke under the preponderance-of-the-evidence standard without requiring any medical opinions to be expressed in terms of “a reasonable degree of medical certainty” and to make appropriate findings as to whether the dependent satisfactorily proved her claim. If so, the trial court should make findings regarding all the other issues litigated by the parties,
 
 see Francis Powell Enters., Inc. v. Andrews,
 
 990 So.2d 914 (Ala.Civ.App.2008), including whether the dependent proved by clear and convincing evidence that the surgery was necessitated by work-related cumulative trauma.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, THOMAS, and MOORE, JJ, concur.
 

 [1]
 

 . The parties stipulated that "the workers' compensation insurance carrier or carriers that paid for the bilateral knee replacements is or are previous carriers, and not the carrier for the [employer] as of the time the replacements were performed."
 

 [2]
 

 . In addition to the employer, the dependent also named several fictitiously named defendants in her complaint, but she never subsequently substituted any actual parties for those fictitiously named defendants. Because "[t]he beginning of trial operates as a dismissal of fictitiously named parties,”
 
 Ex parte Dyess,
 
 709 So.2d 447, 452 (Ala.1997)(citing Rule 4(f), Ala. R. Civ. P.), the existence of the fictitiously named parties does not affect the finality of the judgment entered by the trial court.
 

 [3]
 

 . In its judgment, the trial court states that the parties agreed to submit trial briefs and allow the trial court to rule on the case without oral testimony. Later in its judgment, the trial court states that it is entering a “summary judgment.” However, it is clear from the record that the parties had submitted the case to the trial court for a trial on the merits, not for a summary judgment.
 

 [4]
 

 . In a workers' compensation action, the trial court "has a duty to make a finding on each issue presented and litigated before the court, and ... failure to do so requires reversal.”
 
 Glenn v. Kent Corp.,
 
 416 So.2d 1066, 1068 (Ala.Civ.App.1982). However, because the issue whether the employee's knee-replacement surgery caused his stroke was dispositive in this case, we will not reverse the judgment based on the trial court's failure to make any findings related to the other issues presented in this action.
 
 Glenn,
 
 416 So.2d at 1068.