PITTMAN, Judge.
The Mobile Airport Authority (“the employer”) appeals from a judgment awarding Robert Etheredge (“the employee”) permanent-total-disability benefits under the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975 (“the Act”), for injuries to his foot and lower back. We affirm.

*399
Facts and Procedural History

At the time of trial, the employee, a 57-year-old airfield technician at the Mobile Regional Airport, had been working for the employer for more than 20 years. In 2006, his responsibilities included moving heavy equipment, cutting grass, repairing fence lines, and ensuring that the lights on the runway were operational. On March 31, 2006, the employee was injured at work when a 300-pound manhole cover fell on his left foot, fracturing the first metatarsal, the long bone leading to the big toe. It is undisputed that the employee promptly reported the accident; that the employer paid for the employee’s medical treatment; and that, with the exception of 2 periods totaling 13 months during which the employee returned to work, the employer paid temporary-total-disability benefits from March 31, 2006, through June 2009.
The employee was initially treated by Dr. Michael Cockrell, an orthopedic surgeon, who put a cast on the employee’s foot and later provided the employee with a walking boot. The foot fracture healed without complication, and the employee returned to work briefly from May 15, 2006, until June 23, 2006, at which time he returned to Dr. Cockrell, complaining of pain, swelling, and discoloration of his foot. Dr. Cockrell’s partner, Dr. William Park, diagnosed the employee as suffering from reflex sympathetic dystrophy (“RSD”), or complex regional pain syndrome (“CRPS”), and referred him to Dr. Thomas Yearwood, a pain-management specialist, in July 2006.[1] Over the course of the next several months, Dr. Yearwood administered three sympathetic nerve blocks and prescribed narcotic pain relievers, which treatments provided only temporary relief to the employee. In October 2006, Dr. Yearwood surgically implanted a dual-electrode intraspinal neurostimulator in the employee’s back. The neurostimulator relieved most of the employee’s pain, and, after undergoing a month-long work-hardening program at the direction of Dr. Park, the employee was able to return to work without restrictions in January 2007.
The employee’s job duties required him to walk at least half a mile every day and to operate a tractor. The employee testified that soon after he had returned to work he had experienced pain in his foot again and had begun to favor his left foot and to walk with a limp. The employee, who had previously been diagnosed with degenerative-disk disease, also experienced lower-back pain that became progressively worse, especially with the bouncing that occurred while he was riding a tractor and mowing grass on the airfield.[2] Nevertheless, the employee said that because he had been forbidden, upon pain of immediate dismissal, to take narcotic pain relievers at work, he had worked through the pain. Dr. Yearwood’s office note of August 6, 2007, states:
“[T]he bumping and bouncing associated with heavy equipment does not help [the employee’s] back any, but he is still coping. ' Exam shows bilateral paraspinous muscle spasticity and trigger points throughout the lumbar paraspinous musculature. He does have tender lumbar facets in the L3^i, L4-5, and L5-S1 *400 distributions. He also demonstrates some decreased sensation and dysesthe-sias[3] in his left L5-S1 distribution.”
According to the employee, he was mowing grass near a fence on the airfield in December 2007 when the tractor he was riding ran over a hole that had been left unfilled after an old fence post had been removed. The employee testified that the jolt from the tractor accident had caused him to experience a searing pain that, he said, felt like the electrodes of the neuros-timulator had been “ripped out” of his spine.
On January 7, 2008, the employee consulted Dr. Yearwood, whose office note for that day states:
“[Recently while [the employee] was riding a tractor at work he hit a very large bump which caused the stimulator leads to migrate out of the epidural space prohibiting his stimulator [from] providing] any pain control whatsoever. He is being admitted to undergo lead revision and repositioning in order to sustain optimal pain control.”
On January 10, 2008, the employee underwent a surgical procedure to reimplant the neurostimulator device and to reposition the electrodes. The employee never returned to work after that surgery. He continued to complain of pain at the site of the incision, more pain in his lower back, and pain in his foot. He participated in 10 work-hardening sessions in April 2008, and he reported to Dr. Yearwood that those sessions had caused him to experience “increased pain [in his lower back, radiating into his legs,] ... and a lack of tolerance to general conditioning activities.” Dr. Yearwood attempted to discover the neurological source of the employee’s pain, to adjust the stimulator, and to alter the employee’s prescription medications, but nothing provided the employee with lasting relief. Dr. Yearwood referred the employee to a neurologist, Dr. Terry Millette, who performed a nerve-conduction study on June 10, 2008. That study revealed no significant abnormalities. Dr. Millette’s diagnosis was “[a]typical spinal discomfort with unusual history; cannot rule out mechanical lumbar difficulties.” His recommendation was to consider “mechanical assessment of the thoracolumbar spine.”
The employee underwent a functional-capacities evaluation (“FCE”) on September 3, 2008. The FCE placed the employee in the “light physical demand” category. David Dimmick, the exercise physiologist who conducted the FCE, concluded that the employee had put forth good effort and had demonstrated no gross symptom magnification but testified that the employee had scored positive on two of five Waddell symptom-magnification categories, one of which was “an increase in low back pain [after] light palpation and light pinching,” a reaction that, Dimmick acknowledged, could be explained by the employee’s dy-sesthesia, a condition of which Dimmick had been unaware during the FCE.
On November 7, 2008, Dr. Yearwood performed a provocative diskography of the employee’s lumbar spine. That diagnostic test demonstrated “rather severe disk derangements at L3, L4, and L5, with a developing degenerative pattern in the L2 disk.” Dr. Yearwood concluded:
“The work-related tractor accident has accelerated the degenerative disk disease and pain in [the employee], suggesting an end-plate compromise at more than one level. The axial loading needed to dislodge the implanted neu-rostimulator system is seen to have been sufficient to create vertebral column pa *401 thology of a traumatic nature as well, and explains quite a lot of the [employee’s] symptoms, which heretofore seemed to be somewhat inconsistent.”
In deposition testimony, Dr. Yearwood concluded that the employee’s altered gait that resulted from the 2006 foot injury and the traumatic jolt of the 2007 tractor accident had combined to aggravate or accelerate the employee’s preexisting degenerative-disk disease.
At the request of Millennium Risk Managers (“MRM”), the third-party administrator of the employer’s workers’ compensation carrier, Dr. Tim Revels, an orthopedic surgeon, performed an independent medical evaluation of the employee on January 28, 2009. Based on that evaluation and a review of the employee’s medical records, Dr. Revels determined that the employee had reached maximum medical improvement for the foot injury on January 28, 2009. He opined that the employee’s degenerative-disk disease had been caused by the natural aging process and “wear and tear” over the years. He stated that neither the implantation of the neurostimulator device nor the dislodging of the stimulator leads could have caused, aggravated, or been correlated in any way with the employee’s degenerative-disk disease. He agreed with Dr. Yearwood, however, that the tractor jolt in 2007 could have aggravated the employee’s preexisting degenerative condition. Dr. Revels stated that he would recommend fusion surgery to correct the employee’s disk derangements only as a last resort.
On August 12, 2009, the employee filed a complaint seeking benefits for a September 2007 injury to his left foot. On March 19, 2010, the employee amended his complaint, asserting that the foot injury had occurred on March 31, 2006, after which, the employee alleged, he had suffered an injury to his back “in the latter part of 2007 or the early part of 2008” that had aggravated his preexisting degenerative-disk disease and that had combined with the earlier foot injury to render him permanently and totally disabled.
The employer answered the amended complaint, acknowledging that the employee had suffered a compensable injury to his foot on March 31, 2006, but denying that it had had any notice of the second alleged occurrence, a back injury “in the latter part of 2007 or the early part of 2008,” and asserting the bar of the statute of limitations. On September 22, 2010, the trial court entered a judgment determining that the employee had suffered an initial injury to his foot on March 31, 2006, and that, as a consequence of favoring the injured foot, he had developed an altered gait that had contributed to his lower-back pain. The court further determined that the employee had sustained a second work-related injury, one to his lower back, in December 2007, of which the employer had received notice. Finally, the trial court determined that the employee’s altered gait that was a consequence of the 2006 foot injury and the traumatic jolt of the 2007 tractor accident combined to cause an aggravation and acceleration of the preexisting degenerative-disk disease in the employee’s lower back, thereby rendering him permanently and totally disabled. The trial court awarded permanent-total-disability benefits under the Act in accordance with those determinations. The employer’s postjudgment motion was denied, after which it filed a timely appeal to this court.

Standard of Review

Our review is governed by the Act, which states in pertinent part: “In reviewing the standard of proof ... and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.” Ala.Code 1975, § 25-5-81(e)(1). See also Ex parte Trinity In *402 dus., Inc., 680 So.2d 262, 268 (Ala.1996). “In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” Ala. Code 1975, § 25-5-81(e)(2). Substantial evidence is “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., 680 So.2d at 269 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), and citing § 12-21-12(d), Ala.Code 1975).

Discussion

The employer presents three issues on appeal: (1) whether the back-injury claim is barred by the statute of limitations; (2) whether the trial court’s findings with respect to whether the employer had notice of the December 2007 tractor accident are supported by substantial evidence; and (3) whether the back injury was a cumulative-physical-stress disorder compensable only upon proof by clear and convincing evidence that the disorder arose out of and in the course of the employee’s employment and, if so, whether such clear and convincing evidence was adduced.

I. Statute of Limitations

Section 25-5-80, Ala.Code 1975, provides, in pertinent part:
“[A]ll claims for compensation under this article shall be forever barred unless within two years after the accident the parties shall have agreed upon the compensation payable under this article or unless within two years after the accident one of the parties shall have filed a verified complaint as provided in Section 25-5-88.... Where, however, payments of compensation, as distinguished from medical or vocational payments, have been made in any case, the period of limitation shall not begin to run until the time of making the last payment. ...”
The employer contends that the employee’s back-injury claim is barred by the statutory limitations period set out in § 25-5-80 because, it says, the amended complaint alleging a back injury that resulted from the December 2007 tractor accident was filed on March 19, 2010, more than two years after that accident. The employer argues that the amendment does not relate back to the time of the filing of the original complaint because the amendment alleges an entirely different kind of injury from the injury alleged in the initial complaint. Citing Leslie v. Republic Steel Corp., 273 Ala. 586, 587-88, 143 So.2d 442, 443 (1962), as standing for the proposition that “[pjayment of compensation does not extend the statute of limitation for any injury unless payment is made or liability acknowledged for that injury,” the employer maintains that it paid disability benefits through June 2009 for the employee’s foot injury and for the neurostimulator complications arising therefrom, not for the employee’s back injury.
The trial court determined that the disk derangements in the employee’s lumbar spine resulted from a combination of the employee’s altered gait that had resulted from the employee’s favoring the foot that had been injured in 2006 and the trauma of a tractor jolt in 2007. The employee filed a timely complaint seeking compensation for the foot injury and, by implication, for “ ‘every natural consequence that flow[ed] from’ ” that injury. See Ex parte Pike Cnty. Comm’n, 740 So.2d 1080, 1084 (Ala.1999) (quoting 1 Arthur Larson & Lex K Larson, Larson’s Workers’ Compensation Law § 13.00 (1998)) (“When determining whether a successive injury is compensa-ble, the general rule is that ‘[wjhen the primary injury is shown to have arisen out of and in the course of employment, every *403 natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to [the] claimant’s own intentional conduct.’ ”). See also Sistrunk v. Sikorsky Support Servs., Inc., 961 So.2d 166 (Ala.Civ.App.2007) (reversing and remanding for a determination whether left-shoulder injury was a direct result of employee’s overcompensating with his left arm for his right-shoulder injuries); Landstar Ranger v. Kent, 828 So.2d 322 (Aa.Civ.App.2002) (concluding that injury to employee’s left shoulder, which injury had been sustained during physical therapy for injury to employee’s right shoulder, was a natural and direct result of injury to right shoulder).
The trial court’s finding that the employee’s altered gait had contributed to the development of the disk derangements in his lumbar spine was supported by substantial evidence, specifically the office notes and deposition testimony of Dr. Yearwood. Compare Wal-Mart Stores, Inc. v. Orr, 29 So.3d 210 (Ala.Civ.App.2009) (holding that employee did not present sufficient evidence indicating that her altered gait, which had resulted from a knee injury, had caused or contributed to the development of avascular necrosis in her hip).
The employee did not timely assert a claim specifically seeking compensation for a back injury resulting from the 2007 tractor accident. Nevertheless, because the 2006 foot injury was a contributing cause of the back injury, the back injury was compensable as a consequence of the foot injury.
“It is not necessary that the employment-related injury be the sole cause, or the dominant cause, of the [disability], so long as it was a contributing cause. See Ex parte Valdez, 636 So.2d 401 (Aa. 1994). If the employee suffers from a latent preexisting condition that inevitably will produce injury or death, but the employment acts on the preexisting condition to hasten the appearance of symptoms or accelerate its injurious consequences, the employment will be considered the medical cause of the resulting injury. See, e.g., Taylor v. Mobile Pulley & Mach. Works, Inc., 714 So.2d 300 (Ala.Civ.App.1997).”
Associated Grocers of the South, Inc. v. Goodwin, 965 So.2d 1102, 1110 (Ala.Civ.App.2007).
Dr. Yearwood testified by deposition that, “[h]ad [the employee] never had the tractor incident, the gait abnormality by itself ... may not have contributed to the extent that the rate of degenerative change would be the same.” It is immaterial, however, that the disk derangements in the employee’s lower back would have appeared much later absent the 2007 tractor accident. See Taylor v. Mobile Pulley & Mach. Works, 714 So.2d 300, 301 (Ala.Civ.App.1997) (upholding trial court’s finding that employee’s hip injury had “accelerated or triggered” a latent schizoaffec-tive disorder that rendered the employee permanently and totally disabled, notwithstanding psychiatric testimony that the schizoaffective disorder “would have surfaced eventually even if [the employee] had not suffered the on-the-job injury”).
We conclude that the employee’s back-injury claim was not barred by the statute of limitations.

II. Notice

In responding to discovery, the employee initially stated that the tractor accident had occurred in September or October 2007 and that he had not notified his supervisor, Paul Faggard, of that accident because, he said, Faggard had been on vacation at the time. At trial, the employer presented evidence indicating that Faggard had not been on vacation in September or October 2007. The employee *404 testified that he had been mistaken about the date of the tractor accident and that he thought the tractor accident had actually occurred in December 2007. The employee claimed to have telephoned the office of MRM, the third-party administrator of the employer’s workers’ compensation carrier, and to have given the-details of the tractor accident to a woman who answered the telephone. According to the employee, that woman had stated that the insurer would “tack on” any injuries caused by the December 2007 tractor accident to the March 2006 foot-injury claim. The employee stated that he had later informed Faggard, both of the occurrence of the accident and of his having reported the accident to MRM. According to the employee, Faggard had asked him if he wanted to file a report at that time and the employee had said, “No, [the compensation carrier’s representative] said they were going to take care of it.”
Faggard was the facilities manager at both the Mobile Downtown Airport (also known as “Brookley Field”), and the Mobile Regional Airport (also known as “Bates Field”), where the employee worked. Faggard testified that he had divided his time between the two airports and that he had been “back and forth” between them each day during the relevant period. Faggard said that the employee had neither informed him of the tractor accident nor told him about having reported that accident to MRM. Paul Brown testified that, in late November 2007, he had received a promotion and had replaced Faggard as the employee’s supervisor at Bates Field but that the employee had not reported the tractor accident to him.
Matt Graham, general counsel for MRM, testified that the switchboard operator is the only person who answers the telephone at the MRM office, and, he said, the switchboard operator did not have the authority to decide or to state that MRM or the insurer would “tack on” any claim arising from the tractor accident to the foot-injury claim. Graham explained that MRM policy dictated that, if the employee had told the switchboard operator the details of the tractor accident, the switchboard operator should have referred the employee to an adjustor. Tina Hicks, the adjustor who was handling the employee’s foot-injury claim, did not testify.
Graham acknowledged that MRM would not have paid for any' medical treatment incident to the December 2007 tractor accident without having reviewed the authorized treating physician’s office notes pertinent to the injury that had allegedly resulted from that accident. Graham conceded that MRM had approved and precertified Dr. Yearwood’s surgical procedure to reimplant the neurostimulator device and to reposition the electrodes in the employee’s back. The following exchange then occurred:
“Q. [By counsel for the employee:] Okay. So, we can take it from that, then, that if [Dr. Yearwood’s bill for the surgery] was paid, then it was reviewed and [MRM] had accepted that as being related to the work accident?
“A. [By Graham:] If the adjustor did her job, she got a bill, got records and verified that it was related.”
In rebuttal, the employee presented the testimony of Ezekial Sanders, a former coworker, who stated that he had heard the employee complain about hurting his back when the tractor the employee had been operating had run over a hole. Sanders also said that he and another coworker had been present when the employee had reported the tractor accident to Faggard the day the accident occurred.
With respect to the notice issue, the trial court found:
*405 “[The employee] reported [the tractor] incident to a representative at [MRM], the third-party administrator handling his workers-compensation claim. He was told that this [accident] would be addressed as a part of the existing claim [for the foot injury]. He likewise reported [the tractor] incident to his supervisor either that day, or within a day or two.”
“Actual knowledge sufficient to remove the written' notice requirement [of § 25-5-78, Ala.Code 1975,] is a question of fact to be determined by the trial court.” James v. Hornady Truck Line, Inc., 601 So.2d 1059, 1061 (Ala.Civ.App.1992). In weighing the testimony of the employee and Graham, and in considering the absence of any testimony by Tina Hicks, the adjustor who had handled the employee’s foot-injury claim, the trial court could reasonably have found that the employee had telephoned the office of MRM and had related some information to the switchboard operator who, in turn, had followed MRM policy and had referred the employee to an adjustor, to whom the employee had then reported the accident. “ ‘Knowledge on the part of a supervisory or representative agent of the employer that a work-related injury has occurred will generally be imputed to the employer. Beatrice Foods Co. v. Clemons, 54 Ala.App. 150, 306 So.2d 18 (Ala.Civ.App.1975).’” Goodyear Tire & Rubber Co. v. Long, 31 So.3d 715, 720 (Ala.Civ.App.2009) (quoting Davis v. Paragon Builders, 652 So.2d 762, 764 (Ala.Civ.App.1994)). Giving notice of an accident to a workers’ compensation administrator who, in turn, receives notice of the work-related nature of the accident from the operating surgeon is sufficient. See Champion Inti Corp. v. Williams, 686 So.2d 1204,1206 (Ala.Civ.App.1996).
In the present case, Dr. Year-wood’s office note of January 7, 2008, indicated that the electrodes on the neurosti-mulator device had been dislodged in a work-related tractor accident. Viewing the facts in the light most favorable to the findings of the trial court, we conclude that the trial court was authorized to find that, because MRM had approved and precerti-fied Dr. Yearwood’s surgery to reimplant the neurostimulator device and to reattach the electrodes in the employee’s back, the employer’s representative had had actual knowledge of a work-related tractor accident that had resulted in an injury.
The conflict in the testimony of Faggard and Sanders regarding whether the employee had notified a supervisor of the tractor accident “was a matter to be determined by the trial court, for it is that court that reviews the weight or preponderance of the evidence.” See Wal-Mart Stores v. Elliott, 650 So.2d 906, 909 (Ala.Civ.App.1994).
“When evidence is presented ore ten-us, it is the duty of the trial court, which had the opportunity to observe the witnesses and their demeanors, and not the appellate court, to make credibility determinations and to weigh the evidence presented. Blackman v. Gray Rider Truck Lines, Inc., 716 So.2d 698, 700 (Ala.Civ.App.1998). The role of the appellate court is not to reweigh the evidence but to affirm the judgment of the trial court if its findings are reasonably supported by the evidence and the correct legal conclusions have been drawn therefrom. Ex parte Trinity Indus., [Inc.,] 680 So.2d [262] at 268-69 [ (Ala.1996) ]; Fryfogle v. Springhill Mem’l Hosp., Inc., 742 So.2d 1255 (Ala.Civ.App.1998), aff'd, 742 So.2d 1258 (Ala.1999). The ‘appellate court must view the facts in -the light most favorable to the findings of the trial court.’ Ex parte Professional Bus. Owners Ass’n Workers’ Comp. Fund, 867 So.2d 1099, 1102 (Ala.2003).”
*406 Ex parte Hayes, 70 So.3d 1211, 1215 (Ala.2011).
In the conclusions-of-law section of its judgment, the trial court stated:
“Although the evidence demonstrates that [the employee] did report the December 2007 incident to his supervisor, this was not actually required because the employer was already on notice of the initial job injury. See Ragland Brick Co. v. Campbell, 409 So.2d 443 (Ala.Civ.App.1982) (‘Once the employer has actual notice of an accident and injury, the statute does not require the claimant to provide further notice or continuing information except upon request. In light of Beatrice Foods [Co. v. Clemons, 54 Ala.App. 150, 306 So.2d 18 (Ala.Civ.App.1975) ], we are not convinced that it was absolutely necessary that the employer be informed of the back injury as long as there was a reasonable medical connection between the injury the employer was specifically informed of and the resulting injury.’).”
The trial court’s alternative holding— that no notice of the tractor accident was required because the employer was already on notice of the foot injury and there was a reasonable medical connection between the employee’s altered gait resulting from the foot injury and the employee’s disk derangements — is supported by Alabama law. In Beatrice Foods Co. v. Clemons, 54 Ala.App. 150, 306 So.2d 18 (Civ.App.1975), cited in the trial court’s judgment, Clemons, the worker, fell from the cab of his tractor-trailer truck and hurt his neck and shoulders. Beatrice Foods Company, his employer, acknowledged that Clemons had reported the accident, but it denied any knowledge that Clemons had been injured. Following the accident, Clemons worked with neck pain for nine months before he was diagnosed as suffering from a herniated cervical disk. The trial court resolved the factual dispute as to notice in favor of Clemons. Beatrice Foods appealed, arguing that there was no evidence to support the trial court’s finding that it had had actual knowledge that the accident had resulted in an injury. This court held:
“There was sufficient information brought to the knowledge of [Beatrice Foods] to place it on notice that an accident had occurred to [Clemons] and that a resultant injury of some degree had occurred or was likely to have occurred. [Clemons] imparted to [Beatrice Foods] all the knowledge which he possessed at the time, i.e., that he had fallen a substantial height from the cab of the tractor-trailer rig, landing on concrete with his weight of 280 pounds on his shoulders and neck, and that he was in pain. Once actual knowledge of an accident and injury is imparted to an employer, the opportunity for investigation of the accident and injury and to protect against simulated and exaggerated claims is presented.”
54 Ala.App. at 153-54, 306 So.2d at 20-21. This court followed Beatrice Foods in Ragland Brick Co. v. Campbell, 409 So.2d 443 (Ala.Civ.App.1982), a case also cited in the trial court’s judgment. In Ragland Brick, this court held that the evidence was sufficient to support the trial court’s finding that Campbell, the worker, had given oral notice of an accident resulting in injuries to his knee and back. In the alternative, this court determined that specific notice of the back injury was not required because there was a reasonable medical connection between the knee injury and the back injury. See also Metals USA Plates & Shapes Southeast, Inc. v. Conner, 78 So.3d 428, 434 (Ala.Civ.App.2011) (stating that the trial court had found that the worker’s “lower-back injury was the result of an altered gait, which was caused by [the worker’s] ankle injury” and holding that, because those findings “indicatefd] that there was a reasonable medical con *407 nection between [the worker’s] lower-back injury and his ankle injury, [the worker] was not required to specifically notify the employer of his lower-back injury”).
The trial court’s factual findings regarding the notice issue are supported by substantial evidence, and its legal conclusions are supported by Alabama law.

Cumulative-Physical-Stress Disorder

The employer contends that, if the employee was suffering from a lower-back injury, that injury was a cumulative-physical-stress disorder for which the employee was required to establish his claim by clear and convincing evidence and that the employee did not adduce sufficient evidence in support of his claim. The employer raised that issue in its answer to the amended complaint and again in its post-judgment motion. Section 25-5-81(c), Ala. Code 1975, provides:
“The decision of the court shall be based on a preponderance of the evidence as contained in the record of the hearing, except in cases involving injuries which have resulted from gradual deterioration or cumulative physical stress disorders, which shall be deemed compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the employee’s employment.”
“[T]he burden of proof the claimant must meet in a workers’ compensation action depends not upon the nature of the condition at issue, but upon the manner in which- that condition was purportedly caused.” Associated Grocers of the South, Inc. v. Goodwin, 965 So.2d at 1110 (citing V.I. Prewett & Son, Inc. v. Brown, 896 So.2d 564 (Ala.Civ.App.2004)).
The “condition at issue” in this case was the employee’s disk derange-ments. The trial court determined that the altered gait that had developed as a natural consequence of the employee’s 2006 foot injury was a contributing cause of the disk derangements. Dr. Richardson, Dr. Revels, and Dr. Park all acknowledged that, by its very nature, an altered gait can contribute to the acceleration of a preexisting condition in the lower back only through the mechanism of repetitive walking that places cumulative physical stress on the lumbar spine. Thus, to the extent that the employee’s back-injury claim was based on his altered gait, that claim was subject to the clear-and-convincing-evidence standard. See Wal-Mart Stores v. Orr, supra; Sistrunk, supra. In Harris v. Russell Petroleum Corp., 55 So.3d 1225 (Ala.Civ.App.2010), this court explained:
“If the worker asserts that the original compensable injury caused the worker to gradually acquire a successive injury due to cumulative trauma, then the clear-and-convincing-evidence standard applies to that claim. See Wal-Mart Stores, Inc. v. Kennedy, 799 So.2d 188 (Ala.Civ.App.2001) (holding that the clear-and-convincing-evidence standard applied to the claim of an injured worker who asserted that she had acquired carpal tunnel syndrome from repetitively using a cane and walker while convalescing from work-related hip injuries); and Sistrunk v. Sikorsky Support Servs., Inc., 961 So.2d 166 (Ala.Civ.App.2007) (applying clear-and-convincing-evidence standard to claim that worker injured left shoulder due to overuse following work-related right-shoulder injury).. On the other hand, if the worker alleges that the original compensable injury caused the worker to suffer a later sudden, traumatic injury, it follows that the clear-and-convincing-evidence standard would not apply to that claim.”
55 So.3d at 1229.
Section 25-5-81(c) defines “clear and convincing” evidence as
“evidence that, when weighted against evidence in opposition, will produce in *408 the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.”
The employer does not contest legal causation with respect to the foot injury. It did contest at trial, however, whether the evidence was sufficient to show that the employee had developed an altered gait as a consequence of the foot injury. That evidence was in conflict.
In deposition testimony, Dr. Guy L. Rutledge, Dr. Park’s partner, stated that the employee did not have an altered gait in July 2007 when Dr. Rutledge last saw him. Dimmick, the exercise physiologist who conducted the FCE in September 2008, testified that the employee’s gait was “normal” during the FCE. In deposition testimony taken on May 26, 2010, Dr. Year-wood stated that he had usually seen the employee only when the employee was seated on an injection table and, thus, he could not say whether the employee walked with a limp. Nor could he recall, “off the top of his head,” whether the employee had reported an altered gait. Dr. Yearwood’s office note of June 17, 2009, however, states that the “patient has developed significant low back pain believed to be a result of compensatory gait changes related to his work-related leg injury.”
The employee testified that he had begun to favor his injured foot soon after returning to work in January 2007. He explained that, as the pain in his foot had increased, he had begun to limp and that his limping had become more pronounced as the day progressed. Faggard, the employee’s supervisor, acknowledged that the employee had “walked slower” after the foot injury. Dr. Park testified by deposition that, while he was treating the employee, he had noticed that the employee walked with a limp. In the month preceding his return to work in January 2007, the employee had participated in 30 work-hardening sessions at the direction of Dr. Park. The report of the employee’s progress during those sessions that was sent to Dr. Park noted that the employee walked with a “light to moderate limp.”
In the findings-of-fact section of its judgment, the trial court observed that the employee “moves at a very slow pace, takes smaller than normal steps, and has a very pronounced limp.”
“[I]n the context of workers’ compensation claims that the Act requires to be proven by clear and convincing evidence, appellate courts are not permitted to reweigh the evidence presented to the trial court by, for instance, estimating the credibility of witnesses.... The appellate court must review the evidence and the trial court’s judgment solely to answer the question whether ‘ “the fact-finder reasonably could have determined that the fact was proven by clear and convincing evidence.” ’ ”
DeShazo Crane Co. v. Harris, 57 So.3d 105, 108-09 (Ala.Civ.App.2009) (quoting Ex parte McInish, 47 So.3d 767, 774 (Ala.2008), quoting in turn KGS Steel, Inc. v. McInish, 47 So.3d 749, 759 (Ala.Civ.App.2006) (Murdock, J., concurring in the result)). We conclude that the trial court could have resolved the conflict in the evidence by determining that the witnesses who stated that the employee had not walked with a limp either saw the employee only when he was seated or early in the day before the pain he was experiencing had increased enough to produce a visible alteration in his gait. In other words, the trial court was presented with evidence that, the trial court could reasonably have determined, clearly and convincingly es *409 tablished the fact that the employee had developed an altered gait as a consequence of his foot injury.
With respect to medical causation, there was no conflict in the evidence. Dr. Richardson, Dr. Revels, and Dr. Park all acknowledged that an altered gait can cause lower-back problems or can aggravate and accelerate preexisting biomechanical problems in the lumbar spine. The trial court’s medical-causation finding — which adopted Dr. Richardson’s conclusion that the altered gait that had developed as a natural consequence of the employee’s 2006 foot injury was a contributing cause of the disk derangements — was, therefore, based upon evidence that would “produce in the mind [of the trial court] a firm conviction as to each element of the claim and a high probability as to the correctness of the conclusion.” § 25-5-81 (c).
For the reasons set out above, the judgment of the Mobile Circuit Court is affirmed.
AFFIRMED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. Dr. Park's deposition testimony indicated that, although RSD/CRPS is not completely understood, it is essentially a post-traumatic condition in which the autonomic nervous system magnifies the pain beyond what would normally be expected for the type of injury involved. Treatment consists of an attempt to block the sympathetic chain in the spinal cord to prevent the pain signals from reaching the brain.

. The employee explained that 20 years earlier, while working for a different employer, he had fallen and hurt his back and that he had previously been diagnosed with degenerative-disk disease.

. Dysesthesia is a hypersensitivity to touch, caused by abnormalities in the central nervous system.