*This opinion is subject to revision before final publication in the Pacific Reporter*

**2015 UT 78**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

WASHINGTON COUNTY SCHOOL DISTRICT and UTAH SCHOOL BOARDS
RISK MANAGEMENT ASSOCIATION,
*Petitioners, Appellants*,

*v.*

LABOR COMMISSION and STEVEN H. BROWN,
*Respondents, Appellees.*

No. 20130847
Filed August 25, 2015

On Certiorari to the Utah Court of Appeals

Attorneys:

Bret A. Gardner, Kristy L. Bertelsen, Salt Lake City, for petitioners

Sherry Hayashi, Jaceson R. Maughan, Salt Lake City for respondents
Labor Commission

Aaron J. Prisbrey, Trevor C. Sanders, St. George, for respondent
Steven H. Brown

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE DURHAM, JUSTICE
PARRISH,[*] and JUSTICE HIMONAS joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1    This case concerns the scope of the Utah Workers'
Compensation Act. Specifically, we are asked to address the causal
connection that an employee must establish between an initial
workplace injury and a subsequent non-workplace injury in order to
recover workers' compensation for the subsequent injury. In January

---

[*] Justice Parrish sat on this case and voted prior to her resignation
on August 16, 2015.

2003, Steven Brown, suffered a back injury when he fell down the steps of his bus while at work as a school bus driver for the Washington County School District (School District). This injury required medical treatment and eventual spinal surgery. He received workers' compensation for this injury. Subsequently, in September 2007, Mr. Brown was reinjured when a child jumped on his back and knocked him to the ground at a local festival. He required additional spinal surgery for this second injury.

¶2   Mr. Brown requested and received workers' compensation for his second injury. The Administrative Law Judge (ALJ) with the Utah Labor Commission (Commission) determined that his second injury was causally linked to his workplace injury and awarded benefits. The School District appealed the ALJ's decision to the Commission, which affirmed. It then appealed to the court of appeals, which also affirmed. The School District presents two issues on appeal.

¶3   First, it claims the court of appeals erred in determining that the second injury was a natural result of the primary injury and thus compensable under the Utah Workers' Compensation Act. Mr. Brown disagrees. Specifically, the parties argue over what causal connection is required between the primary workplace injury and the subsequent non-workplace injury in order to allow workers' compensation benefits for the second injury. After reviewing the statute and our caselaw, we clarify that under the direct and natural results test we adopted when interpreting the Workers' Compensation Act in *Mountain State Casing Services v. McKean*,[1] the compensable workplace injury must be a significant contributing cause of the subsequent non-workplace injury. We remand to the Commission to decide whether Mr. Brown's injury meets this clarified standard.

¶4   Second, the School District challenges the court of appeals' decision affirming the Commission's finding that there were no conflicting medical reports that required submission of the issue of medical causation to a medical panel. Because we have clarified the applicable standard and remand the case to the Commission, we decline to address the School District's second issue. As additional hearings on medical causation will be required, the ALJ will have to decide anew if there are conflicting medical opinions and thus whether a medical panel is appropriate.

---

[1] 706 P.2d 601, 602 (Utah 1985) (per curiam).

**Background**

¶5 This case concerns the causal relationship between injuries that resulted from two separate incidents involving Mr. Brown.[2] The first incident occurred on January 27, 2003, when Mr. Brown fell down the steps of a school bus and injured his lower back. At the time, he was employed as a school bus driver for the Washington County School District. As a result of the accident, Mr. Brown received pain management and eventually underwent surgery to address "a large extruded disc herniation" on the left side of his lumbar spine. He sought, and was awarded, workers' compensation benefits for this injury and in October 2004, he returned to work driving a school bus for the School District.

¶6 Subsequently, on September 1, 2007, Mr. Brown was attending the local "Peach Days" celebration when a child jumped on his back, knocking him to the ground. Following the incident, he experienced "constant stabbing, burning pain in his lumbar area that radiated from his back all the way down his legs." His treating physicians identified an injury to the right side of his lower back, and he underwent corrective surgery. Mr. Brown filed for workers' compensation benefits, and the School District denied liability, "assert[ing] that Brown had sustained a subsequent non-industrial intervening accident . . . over four years after the industrial accident, for which [it] did not have workers' compensation liability." An ALJ with the Labor Commission held a hearing and concluded that "all medical evidence support[ed] a finding that the prior industrial disc injury was a contributing cause to the outcome and injury resulting from the festival incident." The School District appealed this decision to the Commission, which affirmed the ALJ's decision. It then appealed to the court of appeals, which affirmed the Commission's decision.[3] Below, we review the medical evidence and then discuss the parties' arguments on appeal.

¶7 Following Mr. Brown's fall from the bus in January 2003, he was treated for left-side lower-back pain by Dr. Dale Stott. Dr. Stott attempted to manage his pain with various procedures, including steroid injections and a nerve block. But Mr. Brown continued to

---

[2] The parties did not challenge the facts as recited by the court of appeals in *Washington County School District v. Labor Commission*, 2013 UT App 205, ¶¶ 2–15, 45, 309 P.3d 299. Therefore, we recite the facts consistent with the court of appeals opinion.

[3] *Id.* ¶ 45.

experience back pain and was referred to a spinal surgeon, Dr. Mark Kabins. In August 2004, Mr. Brown was given an MRI and Dr. Kabins concluded based on the MRI that he was suffering from a large disk herniation and sequestration in his lower spine at L4/5—the fluid between these disks had ruptured, been squeezed out, and separated from the main part of the disk. In late August 2004, Dr. Kabins performed surgery on the left side of Mr. Brown's lower spine to repair this damage. In postoperative examinations, Dr. Kabins noted that Mr. Brown "does have intermittent back discomfort, but is clearly improved and stable." Dr. Kabins prescribed pain medication and treated Mr. Brown again for a flare-up of back discomfort in mid-October 2004. But three weeks later, Dr. Kabins reported that Mr. Brown was "doing well with minimal discomfort." Mr. Brown returned to work for the School District as a bus driver in October 2004.

¶8   Mr. Brown did not seek medical attention for his back for more than two years. But in March 2007, Mr. Brown visited Dr. Stott and reported low back pain and pain and numbness in his left leg. He indicated that this pain had existed during the prior two years and that he suffered daily. Dr. Stott diagnosed Mr. Brown with "Failed Back Surgery Syndrome" and "[p]robable recurrent disc herniation," and ordered an MRI. The March 2007 MRI revealed a reoccurrence of issues at the previous injury site. Specifically, it showed an L4/5 recurrent disc extrusion, meaning that the disk had ruptured and fluid had been excreted. The MRI indicated that this injury was also affecting the right side of Mr. Brown's spine. The radiology report found that the disc extrusion had mildly compromised both the lateral recesses, the area within the spinal canal on either side of the spine, and the right neuroforamen, the opening on the right side of the vertebra that allows nerves to pass from the spinal cord to other parts of the body. Dr. Stott tried to manage Mr. Brown's pain with steroid injections in April and May 2007.

¶9   In addition to the March 2007 flare-up, Mr. Brown "testified that he never recovered from the January 27, 2003 accident and was always stiff and sore and would have flair [sic] ups that required pain medication." This pain medication was covered by workers' compensation.

¶10 Four months after receiving steroid injections for his back pain, Mr. Brown was injured while attending a local festival when a child jumped onto his back, knocking him to the ground. Mr. Brown did not see, and could not identify, the child who jumped on him. Following the incident, he suffered from "constant stabbing, burning

pain in the lumbar area which radiated to the buttock bilaterally and down his legs." Mr. Brown visited Dr. Stott on September 19 concerning his back pain. Dr. Stott again diagnosed him with "Failed Back Surgery Syndrome" and "[l]umbar radiculopathy." A subsequent MRI showed "a large extruded disc herniation at the L4-5 level, which is the same level of his previous work-related injury, but on the opposite side of the disc."

¶11  In October 2007, Mr. Brown consulted with Dr. Kabins—the doctor who had performed his previous spinal surgery. Based on his examination of Mr. Brown, Dr. Kabins decided surgery was appropriate. Mr. Brown then consulted Dr. Gary Snook, who diagnosed him with "[i]ntervertebral disc disorder with myelopathy, lumbar region" and performed surgery in November 2007. A follow-up surgery was performed to remove some remaining disc fragments that were causing significant pain.

¶12 Three doctors expressed medical opinions regarding whether the January 2003 injury had contributed to the September 2007 injury. All expressed the opinion that there was some causal connection. Dr. Richard Knoebel examined Mr. Brown at the request of the School District in March 2008, after Mr. Brown had filed a claim for workers' compensation for the 2007 injury. In his report, Dr. Knoebel concluded that "it must be said with a reasonable degree of medical probability that 'the initial work-related accident (is merely) a contributing cause of the subsequent injury.'" He also stated that, "[i]n summary, from a medical viewpoint, the significant incident requiring subsequent surgery by Dr. Snook was the non-industrial 9/1/07 aggravation of the patient's low back and L4/5 disc. *There was a small contribution only from the patient's pre-existing degenerative L4/5 disc and the prior 1/27/03 industrial incident with surgery.*" (Emphasis added). He also stated that the prior workplace injury "certainly was not the most important or significant cause" but was "a *very minor contributing cause.*" (Emphasis added). Further, he stated that "the prior disc surgery with residual L4/5 disc extrusion already narrowing the right neural fragment is considered, with a reasonable degree of medical probability, *a contributing cause.*" (Emphasis added).

¶13 After discussions with counsel for the School District, Dr. Knoebel expressed his opinion that "the disc herniation in 2007 was not the 'natural result' of the prior industrial event and that the significant cause for the recurrent disc herniation at L4/5 was the nonindustrial permanent aggravation of 9/1/07." Both the ALJ and the court of appeals did not consider Dr. Knoebel's last opinion in their analysis. They concluded that this final opinion, made after

discussions with counsel and couched in legal language, opined on legal causation instead of medical causation.

¶14  Dr. Gary Snook—who performed Mr. Brown's second spinal surgery—checked yes when asked "*[i]s there a medical causal relationship* between the industrial exposure and the problems for which you have been treating the employee" on a signed "Treating Physician Opinion" form that is part of Mr. Brown's Medical Records Exhibit. He did not express an opinion as to the strength of this causal relationship.

¶15  Dr. Kabins—who performed Mr. Brown's initial spinal surgery, examined him after the 2007 incident, and recommended his second surgery—opined that "*certainly it appears that the causality for the herniated disc is multifactorial*, that being preexisting process in the industrial injury, as well as an acute process from the recent attack/incident." But Dr. Kabins did not directly address the strength of the causal relationship.

¶16  An ALJ with the Commission held a hearing to determine if Mr. Brown would receive workers' compensation benefits for the medical treatment and disability that occurred after the 2007 incident. The ALJ considered the medical evidence detailed above, including the opinions of Dr. Knoebel, Dr. Snook, and Dr. Kabins, and issued a written decision finding that "[a]ll medical evidence supports a finding that the prior industrial disc injury was *a contributing cause* to the outcome and injury resulting from the festival incident in that petitioner's disc at the L4/5 level with its 'residual' disc extrusion and 'already narrowing' right neural fragment was a contributing cause to the injury." (Emphasis added). The ALJ also found that "there was no break in the chain of causation between his original work accident and his injury after the September 2007 incident" because there was "no evidence that Mr. Brown was engaged in any rash or foolhardy conduct." The ALJ declined to appoint a medical panel to resolve conflicts between the medical opinions, instead finding there was no conflict. The School District appealed the decision to the Commission challenging the ALJ's findings of medical causation and her failure to refer the case to a medical panel. The Commission upheld the ALJ's decision on both issues and awarded Mr. Brown the additional workers' compensation benefits. The School District appealed to the court of appeals, which upheld the agency's decision. We granted certiorari on the appeal and have jurisdiction under Utah Code section 78A-3-102(3)(a).

**Standard of Review**

¶17 The School District now appeals from the court of appeals' decision.[4] It presents two issues on appeal. First, the School District argues that the court of appeals erred in holding that the non-workplace injury could be deemed a natural result of the prior industrial injury. We review the court of appeals' application of a legal standard for correctness.[5] The application of this legal standard to the facts of the case is a mixed question of fact and law, which we can review under a deferential or non-deferential standard, depending on a number of factors.[6] But here, because we only address and clarify the legal standard and decline to apply this standard to the facts of the case, we need go no further in our traditional standard of review analysis.[7]

¶18 Second, the School District asks us to decide whether the court of appeals erred in affirming the Commission's determination that there were no conflicting medical reports that required submission of the issue of medical causation to a medical panel. This is an issue of fact reviewed under a substantial evidence standard.[8] Under this standard, we "must uphold the Commission's factual

---

[4] *See Washington Cnty. Sch. Dist. v. Labor Comm'n*, 2013 UT App 205, 309 P.3d 299.

[5] *Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶ 7, 308 P.3d 461.

[6] *Id.* ¶ 36. The standard of review for mixed questions can either be deferential or non-deferential depending on three factors:

> (1) the degree of variety and complexity in the facts to which the legal rule is to be applied; (2) the degree to which a trial court's application of the legal rule relies on 'facts' observed by the trial judge, such as witness's appearance and demeanor, relevant to the application of the law that cannot be adequately reflected in the record available to the appellate courts; and (3) other policy reasons that weigh for or against granting [deference] to trial courts.

*Id.* (alteration in original) (internal quotation marks omitted).

[7] *See Manzanares v. Byington (In re Baby B.)*, 2012 UT 35, ¶¶ 40−42, 308 P.3d 382.

[8] *See* UTAH CODE § 63G-4-403(4)(g).

findings if such findings are supported by substantial evidence based upon the record as a whole."[9]

## Analysis

¶19 Below, we discuss and clarify the causal connection required between an initial workplace injury and a subsequent non-workplace injury to allow workers' compensation benefits for the second injury. The court of appeals and the Commission have in several cases relied upon the direct and natural results test that we adopted in *McKean* when interpreting the Act in the subsequent injury context. But they appear to read this test as requiring only that the initial workplace injury be a mere contributing cause, or a minor cause, of the subsequent non-workplace injury. This minimal causal connection is not supported, however, by the language of the Workers' Compensation Act or a close reading of our prior caselaw. Accordingly, we clarify that under our direct and natural results test, the employee must establish that the original workplace injury was a significant contributing cause of the subsequent non-workplace injury in order to recover workers' compensation benefits.

¶20 Because we clarify this causal standard and remand for additional proceedings, we do not address the issue of whether the ALJ erred in declining to refer the case to a medical panel. On remand, the ALJ will be required to conduct a new hearing and apply the appropriate causal standard. Therefore, the ALJ will need to reconsider whether the medical evidence presented creates a conflict under the clarified causal standard.

I. Under the Utah Workers' Compensation Act the Initial Workplace Injury Must Be a Significant Contributing Cause of the Subsequent Non-Workplace Injury to Allow Workers' Compensation Benefits for the Second Injury

¶21 We look first to the Utah Workers' Compensation Act and then to Utah caselaw to determine the appropriate causal standard to apply in cases such as this. The Workers' Compensation Act provides that an employee who is injured by an accident "arising out of and in the course of the employee's employment, wherever such injury occurred, if the accident is not purposely self-inflicted, shall be paid" workers' compensation for the loss and medical bills that result from the injury.[10] The Act does not define a personal injury

---

[9] *Brown & Root Indus. Serv. v. Indus. Comm'n*, 947 P.2d 671, 677 (Utah 1997).

[10] UTAH CODE § 34A-2-401(1).

arising out of and in the course of employment, except to state that it "includes an injury caused by the willful act of a third person directed against an employee because of the employee's employment," but "does not include a disease, except as the disease results from the [compensable] injury."[11]

¶22 In interpreting the Act, we have required a meaningful causal link between the initial workplace injury and the subsequent non-workplace injury in order for the employee to recover workers' compensation benefits for the second injury. Our early cases analyzing this issue discussed the necessary causal link between the two injuries as "direct"[12] and the initial workplace injury as a "significant factor" in the subsequent non-workplace injury.[13]

¶23 In our 1985 *McKean* case, we adopted Professor Larson's direct and natural results test when interpreting the Workers' Compensation Act in this context.[14] Under this test, we analyze both the causal connection between the two injuries and whether there was an event that broke the causal chain.[15] We do not address the causal chain issue here as it is not raised in this case. The Commission found that there was no employee misconduct and thus the causal chain was not broken. The parties do not challenge this finding.

¶24 We acknowledge that while we have spoken primarily in terms of "direct causal connection" and "significant factor" in cases involving subsequent injuries, we have also used language

---

[11] *Id.* § 34A-2-102(j).

[12] *Makoff Co. v. Indus. Comm'n*, 368 P.2d 70, 72 (Utah 1962).

[13] *Perchelli v. Utah State Indus. Comm'n*, 475 P.2d 835, 837 (Utah 1970).

[14] *See Mountain State Casing Servs. v. McKean*, 706 P.2d 601, 602 (Utah 1985) (per curiam) ("[A] subsequent injury is compensable if it is found to be a natural result of a compensable primary injury.").

[15] *Id.* at 603 (noting that an employee can break the chain of causation between the initial workplace injury and the subsequent injury in certain instances through negligence or intentional misconduct); *see also* 1 LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 10.05 (2015) (discussing actions by the employee that may break the causal chain and distinguishing injuries that arise out of "quasi-course activity" and those that do not).

indicating that it is enough if the workplace injury is only "a contributing cause" of the subsequent injury. Specifically, in *McKean* we stated that the employee "is not required to show that his original tragedy [is] the sole cause of a subsequent injury, but only that the initial work-related accident was *a contributing cause* of his subsequent . . . injury."[16]

¶25 Likely as a result of our imprecision in this regard, our court of appeals has interpreted the direct and natural results test to require that the employee need show only that the initial workplace injury was a mere contributing cause of the subsequent non-workplace injury in order to allow workers' compensation benefits. This application of our direct and natural results test, while understandable given language in *McKean*, is not supported by the language of the Workers' Compensation Act or a close reading of our prior caselaw. Below, we discuss our caselaw on this issue and the court of appeals interpretation of the test; we then clarify the appropriate causal standard to apply moving forward and remand Mr. Brown's case to the Commission for further proceedings.

¶26 We have interpreted the Utah Workers' Compensation Act in the subsequent injury context in three cases: *Makoff Co. v. Industrial Commission*,[17] *Perchelli v. Utah State Industrial Commission*,[18] and *Mountain States Casing Services v. McKean*.[19] First, in *Makoff*, we held that the subsequent injury of the employee's back was compensable when he had ongoing back problems following the workplace injury and the injury flared-up after he bent down to pick up a pair of pants.[20] In that case, we stated that "[t]he trouser incident was not independently employment connected, but represented the point at which the [earlier] industrial accident ripened into a compensable disability."[21] We also recognized that under Utah law, "a subsequent aggravation or 'lighting up' of a previous injury is compensable if it is demonstrated that there was a causal relation between the two [injuries]."[22] Further, we noted that a previous back injury that was

---

[16] *McKean*, 706 P.2d at 602 (emphasis added).

[17] 368 P.2d 70.

[18] 475 P.2d 835.

[19] 706 P.2d 601.

[20] *Makoff*, 368 P.2d at 71−72.

[21] *Id.* at 72.

[22] *Id.*

accompanied by severe pain and the need for a back brace could easily cause a degenerative condition that "might result in subsequent surgery and compensable disability in a *direct causal connection*" with the previous incident.[23]

¶27 Next, in *Perchelli*, we held that an employee's subsequent back injuries were compensable when these injuries resulted from a sneezing fit that aggravated his previous workplace back injury.[24] In discussing the causal connection between the two injuries, we stated that "there [was] not a scintilla of evidence in the record to support the conclusion that the sneezing episode [and not the industrial accident] was the cause of [the] applicant's disability."[25] We also recognized "that there was a reasonable medical probability that had applicant not sneezed, some other episode would have triggered the actual disc herniation, requiring surgery."[26] We further noted that Mr. Perchelli's case was clearly distinguishable from a prior case where "the [previous workplace] accident was not a *significant factor* in causing the condition which required corrective surgery."[27]

¶28 Finally, in *McKean*, we adopted Professor Larson's direct and natural result causal test when interpreting the Workers' Compensation Act's "arising out of" language in the context of a subsequent non-workplace injury. We cited Larson's treatise on workers' compensation, along with our previous caselaw, for the proposition that "[a] subsequent injury is compensable if it is found to be a natural result of a compensable primary injury."[28] We also stated that "[the employee] is not required to show that his original tragedy was the sole cause of a subsequent injury, but only that the initial work-related accident was a contributing cause of his subsequent . . . injury."[29]

¶29 We went on to hold that burns on an employee's hand were the natural result of his initial compensable injury—the severing and reconnection of his lower arm, which left his hand with loss of

---

[23] *Id.* (emphasis added).

[24] 475 P.2d at 837.

[25] *Id.*

[26] *Id.*

[27] *Id.* (emphasis added).

[28] *McKean*, 706 P.2d at 602.

[29] *Id.*

sensation.[30] In his treatise, Larson's direct statement of the rule is that a "subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury."[31] Larson also explains, "once the work-connected character of any injury, such as a back injury, has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause."[32] By discussing the possibility of an independent nonindustrial cause, Larson contemplates a meaningful causal link between the initial compensable injury and the subsequent injury in his direct-and-natural-result test.

¶30 A close reading of these three cases provides guidance on the appropriate causal standard. In them, we discuss a standard that requires the subsequent injury to be the "direct"[33] and "natural result of a compensable primary injury"[34] in that the primary injury is a "significant factor in causing the condition" that required further medical care.[35] Further, we have discussed the subsequent injury as a ripening or aggravation of the primary injury, which suggests a direct and significant causal link.[36]

¶31 The court of appeals and Commission appear to read our direct and natural results test to provide compensation for the subsequent injury if there is *any* causal connection between the two injuries—even a very minor connection. Specifically, the court of appeals appears to have applied this causal standard in this case[37]

---

[30] *Id.* at 603.

[31] 1 LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 10.01 (2015).

[32] *Id.* § 10.02.

[33] *Makoff*, 368 P.2d at 72.

[34] *McKean*, 706 P.2d at 602.

[35] *Perchelli*, 475 P.2d at 837.

[36] *Id.* (noting that "there may be a direct causal relationship between an industrial accident and a subsequent disability, although some other episode may represent the point of time when the industrial accident ripened into a compensable injury").

[37] *Washington Cnty. Sch. Dist. v. Labor Comm'n*, 2013 UT App 205, ¶ 43, 309 P.3d 299.

and two other decisions that address this issue—*McKesson Corp. v. Labor Commission*[38] and *Oliver v. Labor Commission & Employers' Reinsurance Fund*.[39]

¶32 In *McKesson*, the court of appeals articulated the rule as requiring that "the initial work-related accident [is merely] a *contributing cause* of the subsequent injury."[40] And in a footnote the court stated that "the claimant must establish that the subsequent aggravation is causally linked to the primary compensable injury."[41] The court cited our decision in *McKean* where we stated that the employee "is not required to show that his original tragedy was the *sole cause* of a subsequent injury, but only that the initial work-related accident was *a contributing cause* of his subsequent hand injury."[42] The court of appeals' articulation of the standard, which added "merely" as a modifier to contributing cause and took out the comparison to "sole cause," appears to allow benefits for the subsequent injury when there is any causal connection with the initial workplace injury.

¶33 While the court of appeals applied this de minimis causal standard in *McKesson*, the facts of that case would likely satisfy the higher causal standard we clarify today. In *McKesson*, the court of appeals concluded that an employee's aggravation of his original workplace neck injury was compensable when the medical evidence showed that the original workplace injury "never properly healed, and . . . a subsequent aggravation of that injury was not unexpected."[43] The employee in *McKesson* had injured his neck in 1995 when he was struck in the head by a falling object at work and subsequently aggravated the injury in 1999 when he hit his head on his truck door as he pulled himself into the vehicle.[44]

¶34 The next case in which the court of appeals discussed the causal link required between an initial and subsequent injury is the

---

[38] 2002 UT App 10, 41 P.3d 468.

[39] 2013 UT App 301, 318 P.3d 777.

[40] *McKesson*, 2002 UT App 10, ¶ 18 (alteration in original) (internal quotation marks omitted).

[41] *Id.* ¶ 18 n.2.

[42] *McKean*, 706 P.2d at 602 (emphasis added).

[43] *McKesson*, 2002 UT App 10, ¶ 27.

[44] *Id.* ¶¶ 2, 7.

one now before us. The court of appeals cited to *McKean* for the proposition that "our supreme court has instructed that the 'natural result' standard does not require an employee 'to show that his original tragedy was the sole cause of a subsequent injury, but only that the initial work-related accident was a contributing cause of his subsequent . . . injury.'"[45] In applying this standard, the court appears to require the workplace injury to be only a small, or minor, cause of the subsequent non-workplace injury. The court noted that

> [b]oth the ALJ and the Commission combined the medical causation information provided by the experts—including Dr. Knoebel's opinion that the 2003 accident was a *'very minor contributing cause'*—with an examination of the facts and circumstances to arrive at the conclusion that Mr. Brown had proved by a preponderance of the evidence that the 2007 injuries were the natural result of the prior industrial accident and his resultant L4–5 damage.[46]

¶35 The court also states that the medical expert testimony had established that the prior workplace injury had "contributed to some extent" to the subsequent injury[47] and that all the experts concluded that the 2003 accident was "a contributing cause" of the injuries he suffered in 2007.[48] Further, the ALJ also articulated a weaker causal standard in her decision. She states that "if the claimant can show that the initial work-related accident is *merely a contributing cause* of the subsequent injury," then "the claimant has met his burden." (Emphasis added).

¶36 Finally, in *Oliver*, a case the court of appeals decided after it issued its opinion in the case now before us, the court of appeals articulated the standard as requiring that "[t]he claimant must first demonstrate that the subsequent aggravation is the natural result of the primary workplace injury or accident. Stated more precisely, the claimant must establish that the subsequent aggravation is causally linked to the primary compensable injury."[49] The court cites to

---

[45] *Washington Cnty. Sch. Dist.*, 2013 UT App 205, ¶ 40 (alteration in original) (quoting *McKean*, 706 P.2d at 602).

[46] *Id.* ¶ 43 (emphasis added).

[47] *Id.*

[48] *Id.* ¶ 44.

[49] 2013 UT App 301, ¶ 12 (internal quotation marks omitted).

*McKesson* for this articulation of the rule. This statement of the rule, while technically correct in that the two injuries must be causally linked, appears to permit any causal link between the two injuries to allow workers' compensation benefits for the subsequent non-workplace injury. The appeals court in *Oliver* remanded for a decision regarding the causal link between the two injuries.[50]

¶37 We take this opportunity to clarify the causal standard required when an employee attempts to recover workers' compensation benefits for a subsequent non-workplace injury. We hold that under the direct and natural results test, an employee must establish that the initial workplace injury was a significant contributing cause of the subsequent non-workplace injury, not merely a cause or a minor cause. This standard is supported by the plain language of the statute and our prior caselaw interpreting this statute.

¶38 We recognize that it "is the duty of the courts and the commission to construe the Workers' Compensation Act liberally and in favor of employee coverage when statutory terms reasonably admit of such a construction."[51] But the principle of liberal construction is not unbounded.[52] And we do not believe that the legislature intended the "arising out of" language to include any and all subsequent injuries that are in any way causally connected to the workplace injury, no matter how remote. Some meaningful level of causal connection must be required; otherwise the employer becomes the insurer for all subsequent injuries, even those only minimally related to the initial workplace injury.

II. We Decline to Adopt the School District's 50 Percent Causal Standard and Identify the Support for Our Standard in the Approaches of Other Jurisdictions

¶39 In clarifying our standard, we decline the School District's invitation to adopt a standard requiring a greater than 50 percent causal connection between the two injurious events in order to provide compensation. This standard is not supported by the plain language of the Worker's Compensation Act. And, while the School

[50] *Id.* ¶ 14.

[51] *Heaton v. Second Injury Fund*, 796 P.2d 676, 679 (Utah 1990).

[52] *See Jex v. Utah Labor Comm'n*, 2013 UT 40, ¶ 56, 306 P.3d 799 (holding that the liberal construction principle is invoked only in the case where the usual process of interpretation "yields genuine doubt").

District argues that a majority of jurisdictions take such an approach, our survey revealed a much more nuanced picture—with states applying a range of standards. Our research did, however, show that our clarified standard is in line with how many jurisdictions address this issue.

¶40 To begin, the 50 percent standard advanced by the School District is not appropriate as it is not supported by the plain language of the statute. If the legislature had intended a specific percentage standard to be applied, it could have easily built one into the statute.[53] Instead, it broadly stated that injuries that "aro[se] out of and in the course of the employee's employment, wherever such injury occurred" are compensable.[54]

¶41 Further, the School District asserts that a "majority of courts that employ this [natural results] standard . . . require that the causal connection between the two accidents be supported by more than 50%." But in its survey of the law it incorrectly conflates the standard for determining causation of a non-workplace injury with the amount of evidence required to prove this causal relationship.[55] Our

---

[53] *See, e.g.,* UTAH CODE § 78B-5-819(2)(a) (providing that "[i]f the combined percentage or proportion of fault attributed to all persons immune from suit is less than 40%, the trial court shall reduce that percentage or proportion of fault to zero and reallocate that percentage or proportion of fault to the other parties").

[54] *Id.* § 34A-2-401(1).

[55] For instance, the School District cites *Harris v. Russell Petroleum Corp.*, 55 So. 3d 1225, 1231 (Ala. Civ. App. 2010), for the proposition that Alabama has "employed a preponderance of the evidence standard in some cases and a clear and convincing standard in others" when assessing the required causal connection. But *Harris* is mainly a case about the evidentiary standard required to prove the causal relationship, not the causal relationship itself. Appellees fail to separate the evidentiary standard required by the court from the causal-relationship analysis. The court in *Harris* does not announce a clear standard for the causal connection, but does in numerous places indicate that the causal connection required is not simply the same standard the court requires for its evidentiary analysis. *Id.* at 1229–31. For example, the court states that "an employee must . . . establish medical causation by showing that the accident caused or was a contributing cause of the injury" and that "the dependent [must] prove[] by clear and convincing evidence that the surgery was *necessitated* by work-related cumulative trauma." *Id.* at 1230,

(Continued)

survey of the states' approaches to the subsequent non-workplace injury issue revealed a more nuanced picture, with states applying a range of standards based on the "arising out of language" in their workers' compensation laws.

¶42 Generally, the states take one of two approaches when interpreting this broad language. Some, like ours, require the employee to prove that the subsequent non-workplace injury is causally connected to the initial workplace injury.[56] Within these states many apply a standard similar to our clarified standard. Other states provide compensation unless the employer can prove that there was an independent intervening cause sufficient to break the causal chain making the secondary non-workplace injury non-compensable.[57] In still other states, the legislature has acted to more clearly address the subsequent injury situation.[58]

¶43 States that require a causal connection between the initial workplace injury and the subsequent non-workplace injury define this required causal relationship in a number of ways. A majority have adopted Professor Larson's direct and natural results test,

_____

1231 (first alteration in original) (emphasis added) (internal quotation marks omitted).

[56] *See, e.g.*, *Harris*, 55 So. 3d at 1230; *Rodgers v. Workers' Comp. Appeals Bd.*, 214 Cal. Rptr. 303, 308 (Cal. Ct. App. 1985); *Richardson v. Robbins Lumber, Inc.*, 379 A.2d 380, 383 (Me. 1977); *Pace v. City of St. Joseph*, 367 S.W.3d 137, 147 (Mo. Ct. App. 2012); *Grable v. Weyerhaeuser Co. (In re Grable)*, 631 P.2d 768, 776 (Or. 1981); *Blackwell v. Bostitch*, 591 A.2d 384, 386 (R.I. 1991); *Allen & Rocks, Inc. v. Briggs*, 508 S.E.2d 335, 340 (Va. Ct. App. 1998).

[57] Although similar in application to the first standard mentioned above, this analysis shifts the burden to the employer and serves as an affirmative defense. To be relieved of liability, an employer must demonstrate that some event independent of the workplace triggered a claimant's disability entirely separate from the primary workplace injury. *See, e.g.*, *Guidry v. J & R Eads Constr. Co.*, 669 S.W.2d 483, 485 (Ark. Ct. App. 1984); *Linder v. City of Payette*, 135 P.2d 440, 441 (Idaho 1943); *Howard Indus., Inc. v. Robinson*, 846 So. 2d 245, 257 (Miss. Ct. App. 2002); *Mendoza v. Omaha Meat Processors*, 408 N.W.2d 280, 286 (Neb. 1987); *Whitfield v. Daniel Constr. Co.*, 83 S.E.2d 460, 462 (S.C. 1954).

[58] *See, e.g.*, FLA. STAT. § 440.09(1) (2014); NEV. REV. STAT. § 616C.175(2) (2014); OR. REV. STAT. § 656.273 (2013).

requiring a subsequent injury to be a "direct and natural result" of the primary injury.[59] Many of these states have not fully defined the causal connection necessary to allow for compensation—requiring instead that the subsequent injury be the direct and natural consequence without significant additional guidance.[60] Some jurisdictions have imported tort law principles into their analysis, either through the use of a proximate cause analysis[61] or through apportionment.[62] While a few jurisdictions do require a causal connection of greater than 50 percent,[63] others appear to require a de minimus causal link, such as a "but for" test.[64]

---

[59] *See* 1 LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 10.01D (2015) (citing jurisdictions that have adopted Larson's "direct and natural consequences" language); *see also Lou Grubb Chevrolet, Inc. v. Indus. Comm'n*, 846 P.2d 836, 839 (Ariz. Ct. App. 1992); *Guidry*, 669 S.W.2d at 485; *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1265 (Colo. 1985); *Sapko v. State*, 44 A.3d 827, 842–43 (Conn. 2012); *Diaz v. Oahu Sugar Co.*, 883 P.2d 73, 76–77 (Haw. 1994); *Addington Res., Inc. v. Perkins*, 947 S.W.2d 421, 423 (Ky. Ct. App. 1997); *Makin & Assocs. v. Harris*, 672 A.2d 1110, 1112–13 (Md. 1996); *Schaefer v. Williamston Cmty. Schs.*, 323 N.W.2d 577, 582 (Mich. Ct. App. 1982); *Jackson v. Red Owl Stores, Inc.*, 375 N.W.2d 13, 18 (Minn. 1985); *Oldham v. OK Iron & Metal*, 996 P.2d 464, 467 (Okla. Civ. App. 1999).

[60] *See, e.g., Travelers Ins. Co.*, 706 P.2d at 1265; *Sapko*, 44 A.3d at 842–43; *Jackson v. Stevens Well Serv.*, 493 P.2d 264, 269 (Kan. 1972); *Addington Res., Inc.*, 947 S.W.2d at 423; *Makin & Assocs.*, 672 A.2d at 1113; *Jackson*, 375 N.W.2d at 18; *Rightnour v. Kare-Mor, Inc.*, 732 P.2d 829, 831 (Mont. 1987); *In re Croteau*, 658 A.2d 1199, 1203 (N.H. 1995); *Aragon v. State Corr. Dep't*, 824 P.2d 316, 319 (N.M. Ct. App. 1991); *Oldham*, 996 P.2d at 467.

[61] *See, e.g., Joseph E. Seagram & Sons, Inc. v. Willis*, 401 N.E.2d 87, 90 (Ind. Ct. App. 1980); *Lane v. S & S Tire, Inc.*, 182 S.W.3d 501, 505–06 (Ky. 2005); *Paige v. City of Sterling Heights*, 720 N.W.2d 219, 227 (Mich. 2006).

[62] *See Weaver v. Swedish Imps. Maint., Inc.*, 354 S.E.2d 477, 483−84 (N.C. 1987).

[63] *See, e.g.,* FLA. STAT. § 440.09(1) (2014) (requiring that "the accidental compensable injury must be the major contributing cause of any resulting injuries" and defining "major contributing cause" as "the cause which is more than 50 percent responsible for the injury

(Continued)

¶44 Though it is difficult to categorize the diverse approaches of the states, our clarified standard is in line with the approach of several jurisdictions.[65] For instance, the Maine Supreme Court has stated that "the proper approach to the causation question requires that the commissioner first determine whether a work-related injury occurred. If that inquiry is answered in the affirmative, the critical question then becomes whether the work-related injury remained a substantial factor in causing the ultimate disability."[66] Similarly, in Missouri "when work is a substantial factor in causing the medical condition, every natural consequence that flows from the injury, including a distinct disability in another area of the body, is compensable as a direct and natural result of the primary or original injury."[67] Further, Rhode Island requires the "first injury [to be] a material contributing cause or a substantial factor in causing the second injury."[68]

¶45 Also, legislatures that have directly addressed the subsequent non-workplace injury issue have similarly defined the causal standard. For instance, in Nevada the legislature requires proof that the workplace injury was a "substantial contributing cause."[69] The Nevada statute also shifts the burden to the insurer, providing that the employee's subsequent aggravation of her injury is compensable "unless the insurer can prove by a preponderance of the evidence that the [subsequent] injury . . . is not a substantial contributing cause of the resulting condition."[70] Similarly, in Oregon the legislature has stated that worsening of a compensable injury is

as compared to all other causes combined for which treatment or benefits are sought"); *Ball v. State ex rel. Wy. Workers' Safety & Comp. Div.*, 239 P.3d 621, 628 (Wyo. 2010).

[64] *See, e.g., Global Prods. v. Workers' Comp. Comm'n*, 911 N.E.2d 1042, 1046 (Ill. App. Ct. 2009) ("So long as a 'but-for' relationship exists between the original event and the subsequent condition, the employer remains liable.").

[65] *See Lou Grubb Chevrolet, Inc.*, 846 P.2d at 839; *Richardson*, 379 A.2d at 383; *Pace*, 367 S.W.3d at 146–47; *Blackwell*, 591 A.2d at 386.

[66] *Richardson*, 379 A.2d at 383 (citation omitted).

[67] *Pace*, 367 S.W.3d at 147 (internal quotation marks omitted).

[68] *Blackwell*, 591 A.2d at 386.

[69] NEV. REV. STAT. § 616C.175(2) (2014).

[70] *Id.*

also compensable, but "if the major contributing cause of the worsened condition is an injury not occurring within the course and scope of employment, the worsening is not compensable."[71]

¶46 We decline to adopt the 50 percent causal standard advanced by the School District, as it is not supported by our statute or caselaw. Further, it is not, as the School District has suggested, how a majority of jurisdictions address this issue. Our clarified standard—requiring the primary workplace injury to be a significant contributing cause of the subsequent non-workplace injury—is supported by the plain language of the Utah Worker's Compensation Act and our prior caselaw. This standard is also in line with how many jurisdictions interpret similar language in their workers' compensation laws and how legislatures that have addressed this issue have defined the required causal connection. Because the standard applied by the court of appeals and the Commission is inconsistent with our clarified standard, we remand this case to the Commission to conduct this fact-intensive analysis under the correct standard.[72]

¶47 As stated above, because we clarify the causation standard and remand for additional proceedings, we do not address the issue of whether the ALJ erred in not referring the case to a medical panel. The ALJ will have to reconsider whether the medical evidence presented creates a conflict under the clarified causal standard.

### Conclusion

¶48 We clarify that our causal standard under the direct and natural results test requires the employee to establish that the primary workplace injury was a significant contributing cause of the subsequent non-workplace injury in order to recover workers'

---

[71] OR. REV. STAT. § 656.273(1) (2013).

[72] *See Nelson v. State Tax Comm'n*, 506 P.2d 437, 440 (Utah 1973) ("It is within the inherent power, and the procedural rules of this court, to order a new trial, or a further trial of material issues, when the interests of justice so require; and this is equally true with respect to the review of proceedings of administrative agencies." (footnote omitted)); *see also McBride v. Motor Vehicle Div. of Utah State Tax Comm'n*, 1999 UT 9, ¶ 20, 977 P.2d 467 (remanding the case back to the Commission to apply the correct legal standard to the facts of the case); 1 LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 10.04 (2015) (recognizing that "[d]ecisions in these sorts of cases are necessarily fact driven").

compensation benefits for the subsequent injury. We therefore remand the case back to the Commission to determine if Mr. Brown's injury meets this standard. Because we remand the case for further proceedings we do not address the medical panel issue.

―――――――――