**2019 UT App 121**

## THE UTAH COURT OF APPEALS

GENA L. WALLACE,
Petitioner,

*v.*

LABOR COMMISSION, AMANGIRI RESORT, AND
WORKERS' COMPENSATION FUND,
Respondents.

Opinion
No. 20180677-CA
Filed July 11, 2019

Original Proceeding in this Court

Virginius Dabney and Stony Olsen, Attorneys
for Petitioner

Floyd W. Holm, Attorney for Respondents Amangiri
Resort, and Workers' Compensation Fund

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES RYAN M. HARRIS and DIANA HAGEN concurred.

MORTENSEN, Judge:

¶1      Gena L. Wallace seeks judicial review of the Utah Labor
Commission's (Commission) order dismissing her claim for
permanent total disability. We decline to disturb the
Commission's decision.

¶2      In October 2011, Wallace, employed at Amangiri Resort in
southern Utah, fell while descending some stairs as she was
leaving the lobby to retrieve an item from a guest's car. She
received medical care for her injuries. Subsequently, Wallace
made a workers' compensation claim and asserted that the
accident resulted in a permanent disability, preventing her from
finding work. Respondents Amangiri Resort, the Commission,

and Workers' Compensation Fund (collectively, WCF) denied that Wallace was permanently and totally disabled.

¶3 After an evidentiary hearing in January 2015, the administrative law judge (ALJ) referred Wallace's case to a medical panel, which issued a report in July 2016 (First MPR). The First MPR contained the following opinions: (1) Wallace can sit for "40–45 minute intervals over an 8 hour workday with 5 minute breaks standing or reclining between each interval"; (2) while Wallace's use of oxycodone does not prevent her from driving to and from work, she should not be assigned driving assignments as part of her work schedule; (3) Wallace is "able to focus and concentrate to receive instructions, remember those instructions and carry them out on a continual basis over an 8 hour workday"; (4) Wallace can perform workplace tasks involving bending, stooping, lifting objects, twisting, turning, sitting, walking, reaching, pushing, and pulling; (5) Wallace can manage her "low back pain in a light work setting" and "is able to work a light duty work assignment"; (6) Wallace "has the motor function to use her hands, arms, legs and feet in a coordinated pattern in the workplace"; and (7) "[l]ack of leg pain and radiculopathy[1] allow [Wallace] to pursue light work activities and activities of daily living."

¶4 In August 2016, Wallace filed an objection to the First MPR. Wallace's objection included a letter from a physician (Medical Opinion) and a letter from a vocational expert (Vocational Opinion), both written in response to the First MPR. In November 2017, the medical panel issued a second report

---

1. "Radiculopathy" refers to "[a]ny disease of a nerve root." *Radiculopathy*, Taber's Cyclopedic Medical Dictionary 1963 (21st ed. 2009).

(Second MPR), substantially the same as the First MPR.[2] Wallace also filed an objection to the Second MPR.

¶5   In the Findings of Fact, Conclusions of Law, and Order denying compensation (ALJ Decision), the ALJ excluded from evidence the Vocational Opinion because it was not timely and did "not go to the medical panel objection but appear[ed] to be a back door attempt to place new evidence into the record which denies [WCF's] right of due process to counter the evidence." The ALJ also excluded the Medical Opinion because it was not timely and offered "duplicative and irrelevant" evidence.

¶6   Wallace sought review by the Commission. In its order affirming the ALJ Decision, the Commission agreed with the ALJ's exclusion of the Vocational Opinion and the Medical Opinion from evidence. Citing rule R602-2-1(H)(5) of the Utah Administrative Code, the Commission explained that "[l]ate-filed medical records may or may not be admitted at the discretion of the ALJ by stipulation or for good cause shown." The Commission further explained that Wallace had "not offered good cause for such evidence to be admitted." Specifically, the Commission stated, "[The Medical Opinion] is duplicative of [the physician's] other treatment notes and opinions already in the record." Regarding the Vocational Opinion, the Commission stated, "There is nothing in the record to suggest that [Wallace] could not have obtained and submitted [the Vocational Opinion] prior to the close of the evidentiary period, which occurred at the conclusion of the hearing on [Wallace's] claim." Wallace now seeks judicial review of the Commission's decision.

---

2. In our review, the two reports appear to be identical apart from the date of issue and formatting.

ISSUES AND STANDARDS OF REVIEW

¶7    The first issue is whether the Commission violated its own rules when it declined to consider medical evidence submitted after a hearing. The standard of review for an agency's application and interpretation of its own rules is abuse of discretion. *Brown & Root Indus. Service v. Industrial Comm'n of Utah*, 947 P.2d 671, 677 (Utah 1997) ("When reviewing the Commission's application of its own rules, this court will not disturb the agency's interpretation or application of one of the agency's rules unless its determination exceeds the bounds of reasonableness and rationality."). "Thus, we will overturn the agency's interpretation only if that interpretation is an abuse of discretion." *Id.*

¶8    The second issue is whether the Commission's conclusion that Wallace was not limited in her ability to perform the essential functions of her prior work was supported by the evidence. "This is an issue of fact reviewed under a substantial evidence standard. Under this standard, we must uphold the Commission's factual findings if such findings are supported by substantial evidence based upon the record as a whole." *Washington County School Dist. v. Labor Comm'n*, 2015 UT 78, ¶ 18, 358 P.3d 1091 (cleaned up).

ANALYSIS

I. Discretion to Admit or Exclude New Evidence

¶9    Wallace argues that the Commission erred when it excluded the Medical Opinion and the Vocational Opinion from consideration. The Utah Administrative Code grants the ALJ discretion as to whether to admit new evidence. Rule R602-2-1(I)(8) states that the evidentiary record is "closed at the conclusion of the hearing, and no additional evidence will be

accepted without leave of the administrative law judge." And rule R602-2-2(B)(4) states,

> A hearing on objections to the [medical] panel report may be scheduled if there is a proffer of conflicting medical testimony showing a need to clarify the medical panel report. Where there is a proffer of new written conflicting medical evidence, the Administrative Law Judge may, in lieu of a hearing, re-submit the new evidence to the panel for consideration and clarification.

Finally, rule R602-2-1(H)(5) clarifies, "Late-filed medical records may or may not be admitted at the discretion of the administrative law judge by stipulation or for good cause shown."

¶10 The plain language of these rules grants the ALJ discretion to exclude or admit the Medical Opinion and the Vocational Opinion. After the close of the hearing, no new evidence will be accepted "without leave" of the ALJ. Utah Admin. Code R602-2-1(I)(8). Thus, while the rules clearly allow the submission of "[l]ate-filed medical records," such submission is "at the discretion" of the ALJ and "by stipulation or for good cause shown." *Id.* R602-2-1(H)(5). Then, if the new evidence is admitted, the ALJ "may" schedule a hearing on the objections or "may . . . re-submit the new evidence to the panel for consideration and clarification." *Id.* R602-2-2(B)(4). We conclude that it was reasonable and rational for the Commission to interpret and apply the rules as affording discretion to the ALJ in determining whether to admit or exclude the Medical Opinion and the Vocational Opinion. *See Brown & Root Indus. Service v. Industrial Comm'n of Utah*, 947 P.2d 671, 677 (Utah 1997). Thus, the only question left for us to address is whether the Commission abused its discretion in excluding the evidence in question.

¶11 Regarding the Medical Opinion, the rules allow submission of "conflicting medical testimony" only if the evidence offered is "new." Utah Admin. Code R602-2-2(B)(4). But nothing in the Medical Opinion is new. Wallace had already submitted more than 240 pages of medical records from her physician. The Medical Opinion that Wallace attempted to submit consists of a one-page summary of the previously submitted medical records but does not claim to add any new information. Rather than offering new evidence, the Medical Opinion largely consists of a response by Wallace's physician expressing his disagreement with the vocational conclusions of the medical panel. Indeed, Wallace admits that the Medical Opinion "considered" the First MPR's "implications for [Wallace's] ability to work." Wallace also claims that the Medical Opinion "pointed out some of the evidence that the [medical panel] had not considered." From these observations, Wallace argues that the Medical Opinion is "new medical evidence considering the [First MPR]." We are not persuaded. Such logic would render any letter challenging a medical panel's conclusions "new written conflicting medical evidence." *Id.* R602-2-2(B)(4). Thus, while the Medical Opinion is certainly responsive to the First MPR, the information it contains is not properly medical or new, and the Commission did not act unreasonably in rejecting it as duplicative and cumulative. *See Brady v. Labor Comm'n*, 2010 UT App 58U, para. 12 (stating that although a doctor's letter disagreeing with a medical panel's findings "offer[ed] a different interpretation of the medical evidence[,] . . . [this court could not] say that the ALJ acted unreasonably in concluding that [its contents] did not rise to the level of new written conflicting medical evidence" (cleaned up)).[3]

_____

3. Indeed, a careful reading of the Medical Opinion Wallace sought to submit reveals that it contained no discernible new

(continued…)

¶12 Regarding the Vocational Opinion, the Commission did not abuse its discretion in excluding it from evidence, because it was not timely and Wallace offered no good cause for her delay in filing it.[4] Wallace had ample opportunity to submit the

─────────────────────────────

(…continued)

medical evidence. Rather, it appears to echo the Vocational Opinion in offering only vocational conclusions:

> [T]he recommendation that [Wallace] be allowed to take a break to change positions and rest for 5 minutes every 40 minutes is a clear indicator that she still has disability and requires special accommodations in any work environment. In all practicality, these accommodations are not conducive to a 40-hour work week in a competitive work environment and will likely discourage any potential employer from hiring her. . . . The accommodations required by [Wallace's] work-related injury and chronic back pain are by themselves a likely "deal breaker" for any potential employer. . . . I sincerely feel that [Wallace] is not employable.

Thus, because it is not properly a medical report, the Medical Opinion does not qualify as "new written conflicting medical evidence." *See* Utah Admin. Code R602-2-2(B)(4); *infra* note 4.

4. The Vocational Opinion—because it is a vocational report and not a medical report—does not fall under rule R602-2-2(B)(4) of the Utah Administrative Code, which states, "A hearing on objections to the [medical] panel report may be scheduled if there is a proffer of conflicting medical testimony showing a need to clarify the medical panel report." Similarly, rule R602-2-1(H)(5) is limited to the submission of untimely filed "medical records." While Wallace does not argue it, rule R602-2-1(I)(8) appears to give an ALJ discretion to admit non-medical

(continued…)

Vocational Opinion before the close of the hearing. Wallace was injured in October 2011. She filed for a hearing in May 2014, and her hearing was in January 2015. Therefore, she had eight months from the time she filed for the hearing and over three years from the time of her accident to obtain a vocational report. Yet when objecting to the First MPR in July 2016, Wallace was able to file the Vocational Opinion in less than a month.

¶13    But in seeking review, Wallace argues that she was unable to file the Vocational Opinion until the First MPR was issued. Wallace argues that the Vocational Opinion was based "on the First [MPR] and specifically considered the [medical panel's] restrictions and conclusions regarding [Wallace's] ability to work. How can [the Vocational Opinion] or any other evidence that relies on the contents of a [MPR] be submitted prior to the evidentiary hearing, referral to a [medical panel] and after a [MPR] is issued?" But Wallace's analysis here is flawed because she does not consider the fact that all the evidence relied on in preparing the Vocational Opinion was readily available to the vocational expert before the close of the hearing. Wallace offers no explanation—apart from observing that the Vocational Opinion was responsive to the First MPR—to explain why the Vocational Opinion could not have been submitted at the hearing.[5] Given that all the medical evidence was readily

_____

(…continued)

testimony after the close of a hearing. *See* Utah Admin. Code R602-2-1(I)(8) (stating that after "the conclusion of the hearing, . . . no additional evidence will be accepted without leave of the administrative law judge").

5. We note that the Vocational Opinion mischaracterized both MPRs, which stated that Wallace is able to sit "for 40–45 minute intervals over an 8 hour workday with 5 minute breaks standing or reclining between each interval." The Vocational Opinion

(continued…)

available well before the hearing, Wallace should have submitted a vocational report that anticipated the range of work restrictions that might be imposed. *See Quast v. Utah Labor Comm'n*, 2017 UT 40, ¶ 26, 424 P.3d 15 (stating that "the employee bears the burden of proof on all elements of a permanent total disability claim"). Further, WCF's vocational expert testified at the hearing; likewise, there is no reason Wallace could not have called her vocational expert to testify. Thus, because the Vocational Opinion was untimely, we hold that the Commission did not abuse its discretion in rejecting it.

---

(…continued)

interpreted this statement as requiring potential employers to make unreasonable accommodations that would be "inconsistent with sustained employment" for Wallace. The vocational expert wrote, "In my opinion, scheduled off-task time every 40 to 45 minutes falls in the [unreasonable] category and would not be accommodated in a competitive work environment." The Vocational Opinion assumes that standing for five minutes every 40–45 minutes would require Wallace to be "off-task," resulting in an unreasonable accommodation. But the Vocational Opinion itself states that sedentary work "involves sitting most of the time, but may involve walking or standing for brief periods of time." In addressing these five minute periods, the First MPR states that Wallace required "brief rest *periods*" after 40–45 minutes of working. (Emphasis added.) Contrary to the Vocational Opinion's characterization, the First MPR does not say these rest periods are breaks requiring Wallace to be "off-task." Thus, under the Vocational Opinion's own logic and the recommendations in the First MPR, allowing Wallace to stand for five minutes every 40–45 minutes would not necessarily require her to be "off-task." Rather, she could continue to fulfill her work-related duties while standing for those five minutes without being "off-task."

## II. Sufficiency of the Evidence

¶14　Wallace contends that the decision of the Commission was not supported by substantial evidence. Asserting that the Medical Opinion and the Vocational Opinion represent the only evidence evaluating and analyzing the First MPR, Wallace argues that the Commission was required to rely only on these two opinions. But as we have just explained, these two opinions were properly excluded from evidence. The question remains whether the Commission based its findings on substantial evidence. "We will affirm so long as the Commission's findings are based on substantial evidence, even if another conclusion from the evidence is permissible." *Brady v. Labor Comm'n*, 2010 UT App 58U, para. 7 (cleaned up).

¶15　The Commission based its conclusions on the opinions of a medical doctor and a vocational expert presented before and during the hearing. Wallace claims that this evidence is of "limited value" because it was offered before the First MPR was issued. We disagree. Our review requires us to consider the totality of the record. *See* Utah Code Ann. § 63G-4-403(4)(g) (LexisNexis 2016) ("The appellate court shall grant relief only if . . . the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court . . . ."); *see also Washington County School Dist. v. Labor Comm'n*, 2015 UT 78, ¶ 18, 358 P.3d 1091 (stating that we "uphold the Commission's factual findings if such findings are supported by substantial evidence based upon the record as a whole" (cleaned up)). And the testimony of the witnesses in the hearing, as well as the two medical panel reports, provided substantial evidence upon which the Commission could rely in reaching its decision. In addition, the medical panel itself relied on a substantial medical record—over 480 pages submitted to the ALJ and later to the Commission—in reaching its conclusions.

¶16 "Here, although [Wallace] may have competing medical theories, . . . the Commission's conclusions were certainly supported by substantial evidence," *see Brady*, 2010 UT App 58U, para. 7, that Wallace could manage her "low back pain in a light work setting," "is able to work a light duty work assignment," and therefore is not permanently and totally disabled for the purpose of workers' compensation benefits.

CONCLUSION

¶17 The Commission did not err in affirming the ALJ's decision to exclude the Medical Opinion and the Vocational Opinion. The Medical Opinion did not offer new evidence but only duplicated evidence that had already been submitted. The Vocational Opinion was untimely, and Wallace was unable to show good cause for her delay in submitting it. Furthermore, substantial evidence supported the Commission's conclusion that Wallace was not totally disabled for the purpose of workers' compensation benefits. Accordingly, we decline to disturb the Commission's decision.

———————